Kevin Lee ZIMMERMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 71106.

Court of Criminal Appeals of Texas,
En Banc.

April 7, 1993.

Rehearing Denied June 9, 1993.

Douglas M. Barlow, Beaumont, for appellant.

Tom Maness, Dist. Atty. & John R. De-Witt, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty., Austin, for the State.

CAMPBELL, Judge.

## OPINION

After a trial held in May 1990, a Jefferson County jury found appellant, Kevin Lee Zimmerman, guilty of the October 23, 1987, capital slaying of L— G— H— (hereinafter "the decedent"). The aggravating element of the murder was provided by appellant's commis-sion of it while in the course of also commit-ting robbery.[1] See Tex.Penal Code § 19.-03(a)(2). At the punishment phase, the jury answered affirmatively the punishment is-sues set forth in Article 37.071(b) of the Texas Code of Criminal Procedure,[2] and ap-pellant was sentenced to death. Direct ap-peal to this Court was then automatic under Article 37.071(h).[3] We will affirm.

In seventeen points of error, appellant challenges: the sufficiency of the evidence to support the jury's verdict; the failure of the trial court to grant two of appellant's chal-lenges for cause; the trial court's grant of two of the State's challenges for cause; the trial court's conduct in sustaining the State's objection to appellant's explanation of the presumption of innocence; the admission in evidence of letters written by appellant; the admission in evidence of a picture of the decedent with his wife and child, and of testimony regarding the results of another capital case; the trial court's overruling of appellant's objection to the State's closing argument; the trial court's refusal to submit to the jury appellant's requested instructions regarding mitigating evidence and the defini-tions of certain terms contained in the two punishment issues. After addressing appel-lant's sufficiency point, we will address the majority of appellant's points of error in the order[4] in which they occurred during the course of the trial.

1. The relevant language from the indictment read that appellant "did then and there while in the course of committing and attempting to com-mit Robbery, intentionally cause the death of [L— G— H—, JR.], hereafter styled, the Com-plainant, by stabbing the Complainant with a deadly weapon, to-wit: a knife, that in the man-ner of its use was capable of causing serious bodily injury and death, AGAINST THE PEACE AND DIGNITY OF THE STATE."

2. At the time of appellant's trial, Article 37.071 provided in relevant part:
(b) On conclusion of the presentation of the evidence [at the punishment phase], the court shall submit the following three issues to the jury:
(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reason-able expectation that the death of the deceased or another would result;
(2) whether there is a probability that the defendant would commit criminal acts of vio-lence that would constitute a continuing threat to society; and
(3) if raised by the evidence, whether the conduct of the defendant in killing the de-ceased was unreasonable in response to the provocation, if any, by the deceased.
(c) The state must prove each issue submitted beyond a reasonable doubt, and the jury shall return a special verdict of "yes" or "no" on each issue submitted.
The record reflects that all three issues were submitted to the jury with respect to appellant's conduct in murdering L— G— H—.

3. Unless otherwise indicated, all article referenc-es are to the Texas Code of Criminal Procedure.

4. Appellant's fifth point of error will be ad-dressed out of order. Since appellant's fourth and fifth points of error involve identical legal principles, we will address them in conjunction even though the record reveals that the alleged errors addressed in those points of error did not occur consecutively.

In point of error eight, appellant argues that the evidence at trial was insufficient to sustain his conviction. Appellant does not contest the sufficiency of the evidence to prove that a murder occurred. Appellant does, however, contend that the evidence is insufficient to prove that the killing of the decedent occurred in the course of the commission of a robbery. Therefore, our review will focus briefly upon the facts of the murder, but will specifically focus on those facts which proved the robbery.

In conducting this review, we must consider all of the evidence in the record in the light most favorable to the jury's verdict, and decide whether any reasonable jury could have found from that evidence every element of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154, 158–159 (Tex.Cr. App.1991). Our purpose is not to reevaluate the weight and credibility of the evidence, but to ensure that the jury reached a rational decision. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Cr.App.1988).

Appellant was charged with, and found guilty of, violating Tex.Penal Code § 19.-03(a)(2). The State presented twelve witnesses and numerous pieces of physical evidence during the trial's guilt-innocence phase to prove appellant's guilt. Appellant presented three witnesses. Viewed in the light most favorable to the jury's verdict, the testimony adduced at trial established the following:

Appellant, George Weber, and Kay Gonzales, arrived at a Motel 6 in Beaumont on October 23, 1987. While at the motel, they met the decedent, who also was staying at the motel. After having some drinks, the decedent suggested that they all go to the fair. After returning from the fair, all four people returned to appellant's room. After a short time, the decedent and Kay Gonzales went to the decedent's room, and the decedent paid Gonzales to have sexual intercourse. Then, the decedent and Gonzales

returned to the room where appellant and Weber were.

After some time, Gonzales went to the bathroom and heard a struggle ensuing in the nearby bedroom. In that room, appellant and Weber, armed with knives, attacked the decedent. After the two men stabbed the decedent 31 times, appellant took the decedent's wallet and gave it to Weber. Then, appellant, Weber, and Gonzales, left in their car to try and get appellant to a hospital. While the car broke down after only a short time, appellant did finally reach the hospital, where he received treatment for a knife wound.

Appellant was subsequently arrested and placed in jail. While in jail, appellant wrote numerous letters to Weber and to the district attorney. At trial, the State introduced many pieces of correspondence which appellant had written and signed. In one of these letters [5] to the district attorney, appellant wrote that:

> Mr. H__ [the decedent] never stabbed me and we never got into a fight. Mr. H__ had 4 or 5 hundred dolars (sic) on him and we were drinking so I decided to kill him and take his fucking money. When we got back to the room Mr. H__ did not leave because I took out my knife and opened it and started stabbing him an in the course of me stabbing him I accidentally got stabed (sic) in my arm. After he was dead and I robbed—I rolled him over took the money out of his front pocket and took his wallet. I told George Weber that if he ever said any thing I would kill him, too an we left. The car broke down on the side of the road I made George flag somebody down to take me to the hospital and he did. I through (sic) the knife in the ditch, kicked off my shoes and threw my wallet out. I don't know how much money there was but it was not much because G__ [the decedent] bought some jewlry (sic) for Kay at the fair but however much it was I gave it to George and told him to be cool and split, I would handle the rest.

5. In his seventh point of error, appellant contests the admissibility of this letter. We will address his substantive arguments later in this opinion.

The contents of this letter were corroborated by the testimony of Gonzales. According to her, appellant and the decedent were arguing about an incident that had occurred at the fair. Suddenly, appellant "picked up a knife and ... stabbed him [the decedent] in his shoulder." Gonzales then went into the bathroom and came back out, only to see both appellant and Weber stabbing the decedent, who was "yelling 'Don't kill me. Please don't let me die. Don't kill me. Please don't let me die.'" After the decedent stopped moving, appellant "went to get his tickets—wallet out of his pockets."

Appellant argues that this testimony proves "that the only taking of property described by this witness occurred AFTER the conclusion of the alleged murder, and not as a part and parcel thereof." Appellant also argues, based upon other testimony from Gonzales, that there was no robbery.

On cross-examination, Gonzales admitted that in exchange for her testimony, she pled guilty to second degree robbery. She stated, however, that she had in fact committed no robbery. According to appellant, "[t]he only conclusion to be drawn is that despite the fact that [Gonzales] pled guilty to robbery, her trial testimony indicated that there was in fact no robbery." Also, appellant argues that Weber's testimony that the decedent started the altercation, that appellant and Weber were acting in self-defense,[6] and that there was no robbery, proves that the evidence was insufficient to support the conviction. In response, the State argues that the evidence was sufficient to show that appellant murdered the decedent in the course of committing a robbery because "[t]he mere fact that the wallet was not taken until after Weber and Appellant had finally succeeded in subduing the victim by stabbing him until he was dead does not mean that the killing was not in the course of committing a robbery."

■ To prove this offense, the State was required to show that appellant killed the decedent, *and* that prior to, or during the murder, appellant had the requisite intent to obtain or maintain control of the decedent's property. See Tex.Penal Code §§ 19.-03(a)(2), 29.02, and 31.03. After reviewing the evidence in the light most favorable to the verdict, we conclude that appellant's arguments are without merit.

Concerning Gonzales' testimony, the fact that she pled guilty to a robbery that she claims she did not commit does not mean that no robbery occurred. At most, this testimony means only that *she* did not rob the decedent. It does *not* mean that appellant and Weber did not rob him.

Concerning Weber's testimony, which appellant's letter contradicts, the jurors were free to assign it as much or as little credibility as they desired. Moreover, appellant's letter contradicts his argument that the robbery was not "part and parcel of" the murder. In his letter, appellant specifically stated that he "decided to kill [the decedent] and take his fucking money."

Finally, even if the facts showed that appellant robbed the decedent's body after he had already died, that would not be dispositive. If the State introduces evidence from which the jury could rationally conclude that appellant formed the intent to obtain or maintain control of the victim's property either before or during the commission of the murder, then the State "has proven that a murder occurred in the course of robbery, although the element of appropriation occurred after the murder." *Nelson v. State*, 848 S.W.2d 126, 132 (Tex.Cr.App.1992), rehearing denied, January 20, 1993. Since the jury could rationally conclude from the evidence that appellant had formed the requisite intent, we overrule appellant's point of error eight.

Appellant's points of error four and five are directed at two instances where the trial court refused to grant appellant's challenges for cause of two veniremembers. In points of error four and five, respectively, appellant argues that Lionel Harrington and John Thomas should have been excused because they each exhibited a bias against a defen-

---

6. Appellant argued at trial that he acted only in self-defense. On appeal, however, appellant makes no such argument.

dant's right not to testify. The State responds that the trial court did not err because both Harrington and Thomas stated that they would follow the law. Also, the State argues that appellant failed to preserve any potential error for review.

In order to preserve error stemming from a trial court's denial of a defendant's challenge for cause of a prospective juror, the defendant must show three things: "(1) exhaustion of his peremptory challenges; (2) denial of a request for additional peremptory challenges; and (3) the seating of a juror upon whom the defendant would have exercised a peremptory challenge." *Bell v. State,* 724 S.W.2d 780, 795 (Tex.Cr.App.1986), cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). The record reveals that appellant failed to exhaust his statutorily allotted number of peremptory challenges. Since appellant presents nothing for review, we overrule points of error four and five.

Appellant's points of error two and three are directed to the trial court's grant of two of the State's challenges for cause of two veniremembers. In points of error two and three, respectively, appellant asserts that the trial court erred in excusing Imogene Whitaker and Julie Freeman. The trial court excused Whitaker and Freeman based upon their testimony that their beliefs against the death penalty would preclude them from ever answering the punishment issues affirmatively.

Concerning veniremember Whitaker, appellant admits that she did vacillate, but argues that "[h]er overwhelming testimony was that, while she had strong feelings about the death penalty, she would be able to listen to the evidence and perform her function as a juror." The State argues in response that the record shows that Whitaker was biased against the death penalty. From this, the State argues that the trial court committed no abuse of discretion. Additionally, the State argues that appellant waived any error by failing to object when the trial court granted the challenge for cause.

Concerning the State's argument that appellant has waived any error by failing to object at the time the trial court granted the challenge, our past decisions on the preservation of such error have lacked clarity. In *Barefield v. State,* 784 S.W.2d 38 (Tex.Cr. App.1989), cert. denied, 497 U.S. 1011, 110 S.Ct. 3256, 111 L.Ed.2d 766 (1990), we cited *Guzmon v. State,* 697 S.W.2d 404 (Tex.Cr. App.1985), cert. denied, 475 U.S. 1090, 106 S.Ct. 1479, 89 L.Ed.2d 734 (1986), for the proposition that "[i]f an appellant does not object when a veniremember is excused for cause, he may not challenge that ruling on appeal." *Barefield,* 784 S.W.2d at 41. In *Guzmon,* however, the appellant had lodged *no* objection to two of the State's challenges for cause. 697 S.W.2d at 412–13. Therefore, the language from *Barefield* implying that the objection must be lodged when the challenge is ruled upon was an erroneous summation of the applicable portion of the *Guzmon* opinion.

Moreover, in *Barefield,* the appellant had objected immediately after the trial court granted the State's challenge. 784 S.W.2d at 41. The State argued that the appellant had waived any error by failing to object to the State's challenge *prior* to the trial court's ruling thereon. Since appellant had lodged his objection before the veniremember was dismissed and prior to the questioning of the next veniremember,[7] this Court held that the objection was timely and preserved the issue for review. *Id.* In this case, appellant's attorney unequivocally stated her opposition to the challenge during the voir dire.

The State, citing *Purtell v. State,* 761 S.W.2d 360 (Tex.Cr.App.1988), cert. denied, 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989), further argues that appellant's attorney "gave the distinct impression to the Court that she was abandoning her opposition to the challenge" by failing "to renew her objection when the Court granted the challenge ..." We conclude, however, that

---

7. See *Fuller v. State,* 827 S.W.2d 919, 924–25 (Tex.Cr.App.1992). Writing for the Court, Judge Overstreet stated that "[a]ppellant's objection after the veniremember in question had already been excused and questioning of the next veniremember had begun was far too late" to constitute a timely objection.

*Purtell* is not dispositive. In *Purtell,* the State challenged a veniremember for cause, based upon the veniremember's expressed opposition to the death penalty. The final exchange on voir dire occurred between the defense attorney and the veniremember, during which the veniremember stated that he could not follow the court's instructions because he was "still opposed to the death penalty." 761 S.W.2d at 366. The trial court specifically asked the defense attorney "Anything further, sir?" to which the defense attorney responded "No, sir." It was the attorney's response "that he had nothing further [that] created the distinct impression that he was abandoning his opposition to the motion to dismiss for cause." *Id.*

■ In this case, appellant's attorney was not offered a chance to respond by the trial court. While appellant's attorney remained silent when the challenge was granted, she had already made known her opposition to the challenge. While it would have been better to voice that opposition a second time, we conclude that her silence was not tantamount to an abandonment of her objection. Therefore, we hold that as long as the voir dire record reflects that an objection was lodged either during the voir dire and/or at the time of the trial court's ruling, and that the objection was not abandoned, an appellant will be able to raise on appeal objections to the granting of challenges for cause. Having determined that the issue has been preserved, we now address the merits of appellant's arguments.

■ Our review of the record shows that veniremember Whitaker stated that she did not believe in capital punishment, but that she "could really make a true judgment according to the evidence and just blot out [her] beliefs, as long as [she was] not making the decision for the death penalty ..." She did state that her disapproval of the death penalty would not automatically cause her to answer the punishment issues in a certain way. She also stated that she could overcome her beliefs and answer the punishment questions according to the evidence. However, the record reveals that immediately before the trial court granted the challenge, the following exchange between defense counsel and Whitaker occurred:

DEFENSE COUNSEL: So now you've—Because of what I had asked you earlier, you felt like you could answer [the punishment issues] fairly based on the evidence. Are you telling me now that you can't answer them fairly based on the evidence?

WHITAKER: Yes.

■ After reviewing the entire voir dire record of Whitaker, we cannot conclude that the trial court committed an abuse of discretion. Prospective jurors should be excused for cause only if their views would prevent or substantially impair the performance of their duties as jurors. *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); *Moody v. State,* 827 S.W.2d 875, 888 (Tex.Cr.App.1992). Also, a trial court's decision to excuse a prospective juror is reviewed under an abuse of discretion standard because "great deference must be given to the trial court who is in the best position to see and hear the prospective jurors and to evaluate their responses." *Moody,* 827 S.W.2d at 888–889. This is especially true in situations like this where the juror vacillates and "elements such as demeanor, expression, emphasis and tone of voice, all of which escape the purview of the cold record, are important factors in assessing the message conveyed." *Nichols v. State,* 754 S.W.2d 185, 195 (Tex.Cr.App.1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989), overruled on other grounds by, *Butler v. State,* 830 S.W.2d 125, 130 (Tex.Cr.App.1992); *Harris v. State,* 784 S.W.2d 5, 19 (Tex.Cr. App.1989); *Green v. State,* 764 S.W.2d 242, 247 (1989). By her final aforementioned response, veniremember Whitaker expressly indicated that she would not be able to answer the punishment issues fairly. Moreover, the trial court was in the best position to assess her demeanor. Having concluded that the trial court acted within its discretion, we overrule appellant's point of error two.

Concerning veniremember Freeman, appellant admits that she too vacillated, but argues that her testimony, taken as a whole, "indicated that she could listen to the evidence, whether from the State or the de-

fense, judge it fairly and honestly and render a decision." The State responds that the record reveals that Freeman also was biased against the death penalty. Therefore, the State contends that the trial court committed no abuse of discretion in granting the State's challenge for cause.

Freeman indicated on her juror information questionnaire that she did not believe in the death penalty. During the State's initial examination of Freeman, Freeman indicated that the State would never be able to introduce sufficient evidence to compel her to answer the punishment issues affirmatively. After the State challenged Freeman for cause, appellant's attorney proceeded to examine Freeman. During this examination, the following exchanges occurred between Freeman and appellant's counsel:

DEFENSE COUNSEL: Are you saying, then, that you really can't just consider answering those questions, that you can't be honest in answering them?

FREEMAN: I—I couldn't be honest in answering them if my answer would mean [the] death penalty or something like that. I just wouldn't even want to be in the situation like that.

\*　\*　\*　\*　\*　\*

DEFENSE COUNSEL: What we need to know is just can you answer those questions based on whatever evidence is given to you?

FREEMAN: Yes.

DEFENSE COUNSEL: If I've understood you, then, even though you feel strongly against the death penalty, as many people do, that you could perform your function as a juror? You could answer the questions based on the evidence; is that right?

FREEMAN: Yes.

After appellant's attorney concluded the cross-examination, the prosecutor further examined Freeman. During that examination the following dialogue transpired:

PROSECUTOR: ... In fact, on your questionnaire I think you thought that when you put down I can't be a fair and impartial juror because I don't believe in the death penalty. Do you still feel that way?

FREEMAN: I still feel that way.

PROSECUTOR: Do you still feel like your feelings on the death penalty are going to impair or interfere with your ability to be a juror in this cause?

FREEMAN: If I'm going to answer that question honestly, it probably would.

During the remainder of the voir dire examination, appellant's attorney and the prosecutor both continued to elicit inconsistent answers from Freeman. Freeman would indicate to appellant's attorney that she would be fair and answer the punishment issues based on the evidence and then indicate to the prosecutor that she would *not* be able to answer the punishment issues in a manner that would result in the imposition of the death penalty, regardless of the evidence. During the State's final examination, the following exchange transpired:

PROSECUTOR: ... Can you be fair to the State of Texas knowing that they are seeking the death penalty in this case?

FREEMAN: No.

Having conducted a review of the entire voir dire of Freeman, we conclude that the trial court committed no abuse of discretion in granting the State's challenge for cause. Freeman constituted a prime example of the veniremember who equivocates so much that the trial court's decision to excuse should be accorded the highest deference due to the judge's position to assess factors such as demeanor, expression, and tone of voice. *Nichols*, 754 S.W.2d at 195. Since no abuse of discretion was committed, we overrule appellant's point of error three.

■ In point of error one, appellant asserts that the trial court committed error by sustaining the State's objection to appellant's explanation of the presumption of innocence to a member of the venire. During the voir dire examination of veniremember Dennis O'Quinn, appellant's attorney, in reference to the presumption of innocence, stated that "as he sits there now Mr. Zimmerman is innocent ..." The prosecutor objected, stating that appellant "has a presumption of innocence." Appellant argues that the "obvious

implication of the prosecutor's objection and the sanctioning thereof by the Court was that the presumption of innocence did not actually mean that Appellant was innocent." Appellant directs our attention to *Kyles v. State,* 747 S.W.2d 64 (Tex.App.—Beaumont 1988, no pet.) and further argues that this error constitutes "the exact error proscribed by the decision in *Kyles.*" The State argues that the objection was proper because the presumption of innocence does not mean that a defendant is in fact innocent.

While *Kyles* did present the court of appeals with a similar situation, appellant's reliance thereon is misplaced. In *Kyles,* the prosecutor, in explaining the presumption of innocence, stated that "the presumption of innocence does not mean you're innocent, ..." 747 S.W.2d at 64. The defense attorney objected to the prosecutor's comment to the effect "that you [the jury] have to consider a person innocent, but it doesn't mean that they [sic] are really innocent." *Id.* The court of appeals decided the issue against the appellant based upon the conclusion that no harm had occurred, but did *not* definitively conclude that the comment constituted error.[8]

The trial court's sustaining of the prosecutor's objection herein constituted no error. The prosecutor's remark that appellant had "a presumption of innocence" was a correct statement of the law. While the prosecutor did not elaborate upon the meaning of the remark, the presumption of innocence does not carry with it the connotation that a defendant is in fact innocent. Therefore, we conclude that the trial court committed no error in sustaining the State's objection and overrule appellant's point of error one.

In points of error nine through twelve, appellant contends that the trial court erred in admitting exhibits 75, 75A, 78, and 80, respectively. All of the exhibits are letters written by appellant and mailed to George Weber (appellant's co-actor) while the two men were in separate jail cells. Appellant asserts that the exhibits constituted hearsay and "that they were admitted on no proof" that appellant authored them. In response, the State argues that each of the letters was properly authenticated and that appellant has failed to preserve any issue for review regarding the authentication of some of the exhibits.

Exhibits 75 and 75A are identical, with exhibit 75 being an excerpt from exhibit 75A. At trial, appellant objected to exhibit 75 on the grounds that it constituted hearsay, that no proper predicate had been laid, and that nothing within the exhibit indicated "who wrote the letter, ..." In regard to exhibit 75A, appellant objected only that the document constituted hearsay, that no proper predicate had been laid, and that the letter was protected by the attorney-client privilege.[9]

Since the exhibits are identical, and since appellant did argue below that one of the exhibits contained no indicia of authorship, we will address appellant's authentication arguments. Authentication of handwriting may be established by a comparison performed either by experts or by the jury. Tex.Code Crim.Proc. art. 38.27. Proof by comparison to other writing samples is sufficient when an appellant fails to contest under oath the authenticity of either his handwriting when the document is unsigned, or of his signature when the document is signed. *Ca-*

---

8. The court of appeals wrote, "It would have been better if the comment had not been made, but the question is whether it harmed Appellant. If every *loose remark* in a criminal case was cause for reversal, very few convictions would ever stand up. And, there is some philosophic substance in what the prosecutor said." 747 S.W.2d at 65. (Emphasis added.) Characterizing a comment as a "loose remark" is markedly different from deeming that same comment erroneous.

9. While appellant's trial counsel objected to the introduction of exhibit 75A on the basis that it

was protected by the attorney-client privilege, appellant's counsel on appeal makes no argument concerning the privilege. Therefore, we need not reach the merits of the privilege issue. At trial, however, George Weber testified that he had received the letter from appellant. The record reflects that the State obtained the letter by means of a subpoena of all such materials in Weber's possession. We note that appellant's publication of this privileged communication acted as a waiver of the privilege by destroying the confidential nature of the letter. See *Burnett v. State,* 642 S.W.2d 765 (Tex.Cr.App.1982).

*macho v. State*, 765 S.W.2d 431, 434 (Tex.Cr. App.1989); *Ex Parte Watson*, 606 S.W.2d 902, 905 (Tex.Cr.App.1980).

■ Exhibit 75A, a letter from appellant to one of his former attorneys, bears appellant's signature and is notarized. Since appellant never denied his signature under oath, the authenticity of this exhibit could be and was established by comparing it with appellant's writing exemplars that were also admitted into evidence. Since exhibit 75 was nothing more than excerpted portions of 75A, exhibit 75 also could be and was authenticated by comparison. Therefore, we conclude that no error occurred in the admission of exhibits 75 and 75A and overrule appellant's points of error nine and ten.

■ Addressing appellant's points of error eleven and twelve, which pertain to exhibits 78 and 80, we note that both exhibits are letters from appellant to Weber, each of which bears the signature "Lil Z." Appellant never objected to the introduction of these letters based on the State's alleged failure to authenticate them. Appellant lodged only a hearsay objection to exhibit 80. Concerning exhibit 78, appellant objected at trial on the grounds of hearsay, relevancy, and failure to lay a proper predicate. On appeal, however, appellant makes no relevancy or hearsay arguments, but tries to argue that the exhibits were not sufficiently authenticated. Since the complaint made on appeal differs from that lodged at trial, the error complaining of insufficient authentication is waived. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Cr.App. 1990). Additionally, the predicate objection failed to preserve any error due to its insufficient specificity. See *Beck v. State*, 719 S.W.2d 205, 214 (Tex.Cr.App.1986).[10] Having concluded that appellant has failed to present anything for review, we overrule points of error eleven and twelve.

■ In point of error six, appellant argues that the trial court erred in admitting exhibit 71, a photograph of the victim with his wife and infant child. Appellant contends that the exhibit was irrelevant and constituted an attempt by the State to show the character of the decedent. The State argues in response that appellant waived any error concerning the introduction of the photograph.

At trial, appellant objected to the introduction of exhibit 71 solely on the basis of relevancy. On appeal, however, appellant argues that "the introduction of a picture of [the decedent's] wife and child could only have been an attempt ... to show the character of the decedent as a decent family man." When the complaint on appeal differs from that made at trial, the error is waived. *Rezac*, 782 S.W.2d at 870.

In his concurring opinion, Judge Baird states, "As appellant presents the same complaint on appeal as he made at trial, *Rezac* is inapplicable." We disagree with the concurring opinion's assertion that the same complaint is being advanced on appeal as was advanced at trial. At trial, the following exchange occurred:

> [DEFENSE COUNSEL]: As to the State's proffer of State's exhibit 71 we object to it. It's not *relevant* to this proceeding. There's *already a picture of [the decedent] in evidence* ...
>
> [TRIAL COURT]: This [State's exhibit 46] isn't in.
>
> [DEFENSE COUNSEL]: No. No, that's not.
>
> [TRIAL COURT]: It's [State's exhibit 46] tendered. It's not in evidence.
>
> [DEFENSE COUNSEL]: We're object to it [State's exhibit 71] *because there already is another one.*
>
> [TRIAL COURT]: You object to 71?
>
> [DEFENSE COUNSEL]: Yes. On *relevancy*.

This exchange demonstrates that appellant's relevancy objection at trial was based upon the argument that State's exhibit 71 was duplicative because there was already anoth-

10. We recognize that the *Beck* case predates the rules of criminal evidence and that Texas Rule of Criminal Evidence 901 governs the current authentication and identification of letters such as the exhibits discussed herein. Nothing in the rule, however, obviates the requirement that a party opposing the introduction of such an exhibit must lodge a sufficiently specific objection to the authentication of the exhibit.

er picture of the decedent in the record. On appeal, however, appellant argues that the picture was irrelevant "and obviously could only have been an attempt on the part of the State to show the character of the decedent as a decent family man." Appellant in no way presented this argument to the trial court. Therefore, the rationale underlying both *Rezac* and *Purtell,* supra, is entirely applicable and controls the disposition of this question. Since appellant denied the trial court an opportunity to rule upon the complaint advanced on appeal, we will not address appellant's arguments. Having concluded that appellant waived any error, we overrule his point of error six.

In point of error seven, appellant complains of the admission in evidence of exhibit 61C, a letter written by appellant. In the letter, appellant admits that he robbed and killed the decedent. Appellant, citing *Camacho v. State,* 765 S.W.2d 431 (Tex.Cr.App. 1989), argues that the admission of the letter violated the rule against hearsay because the State failed to corroborate appellant's signature.

*Camacho* required us to interpret Article 38.27 and is not dispositive. Article 38.27 provides that "It is competent to give evidence of handwriting by comparison made by experts or by the jury. Proof by comparison only shall not be sufficient to establish the handwriting of a witness who denies his signature under oath." In *Camacho,* the appellant had denied his writing under oath. 765 S.W.2d at 432. In interpreting article 38.27, which literally required a defendant to deny his *signature* under oath, we held that a defendant's sworn denial of his handwriting would also obligate the State to prove handwriting by more than comparison alone. Appellant herein did not deny his signature or his handwriting under oath. Therefore, this case differs from *Camacho* fundamentally..

At trial, appellant objected to exhibit 61C only on the grounds that it constituted hearsay. Appellant lodged no trial objections to the exhibit based upon the State's alleged failure to properly authenticate the letter. Therefore, we need not address that argument on appeal.[11] *Rezac,* 782 S.W.2d at 870. We conclude that appellant has waived any error regarding the admission of exhibit 61C and overrule appellant's point of error seven.

In point of error fourteen, appellant argues that the trial court erred in admitting testimony elicited by the State on cross-examination of a defense witness about the results of another capital case, the case of Johnny Paul Penry. Appellant argues that the State was trying to impermissibly bias the jury. Appellant asserts that the State's purpose in eliciting the testimony "was obviously to demonstrate that while mental retardation may be an issue in a capital murder case, a mentally retarded defendant may even receive the death penalty, and more importantly, Appellant was not even mentally retarded." The State argues that no error was committed because the witness volunteered the original comments about the case and had given direct testimony "intimating possible issues as to Appellant's mental condition which might well be a fore-runner to a possible *Penry* claim at the punishment stage." The State also argues that appellant's general objection failed to preserve anything for review.

During the guilt-innocence phase, Dr. Windel Dickerson testified for appellant. During cross-examination, Dickerson volunteered comments about "the *Penry* decision" and "Johnny Paul Penry's case."[12] Later, the prosecutor asked Dickerson questions specifically about the *Penry* case. Appellant objected to the introduction of such evidence "on the basis of relevancy." The trial court overruled the objection, and Dickerson testi-

11. Had appellant preserved the error, the record reveals that the handwriting was properly proven by comparison according to the terms of Article 38.27. At trial, a handwriting expert compared appellant's handwriting exemplars to the handwriting in the letter. Based upon this comparison, the expert believed that appellant had written the letter. Since appellant failed to deny his handwriting or his signature under oath, this comparison constituted sufficient proof of the letter.

12. From the context of the statement of facts, these comments apparently were references to *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

fied generally about the mental retardation aspects of the *Penry* decision and "the second special provision [i.e. second punishment issue] versus a counterbalancing provision which is not present in our law, ..."

 At trial, appellant lodged only a relevancy objection to the admission of the testimony. On appeal, however, appellant argues that the testimony was irrelevant and constituted an attempt by the State to bias the jury. Therefore, any error is waived because appellant's argument on appeal differs from that advanced at trial. *Rezac*, 782 S.W.2d at 870. Having concluded that appellant has waived any error, we overrule his point of error fourteen.

In point of error thirteen, appellant complains of two instances of the prosecutor's jury argument. Appellant contends that the two comments by the prosecutor constituted an effort to strike at appellant "over his counsel." The State responds that the arguments were entirely proper and that appellant failed to preserve error concerning one of the instances.

During closing argument at the guilt-innocence phase, the prosecutor argued that:

Well, Kay Gonzales' testimony is what you decide it is. And just to show you how [appellant's attorney] distorted what Kay Gonzales' testimony is, you can ask the court reporter to transcribe those particular parts that you think are different and you know are different. Also, to tell you how [appellant's attorney] distorts the testimony ask [the court reporter] to transcribe the part about Dr. Dickerson's characterization of this [referring to exhibit 61C in which appellant admitted he robbed and killed the decedent]. [Appellant's attorney] said that [Dr. Dickerson] said it was untrue. Think back—

At this point, appellant's attorney objected on the grounds that the prosecutor was "misstating" her argument and was "attacking the defendant over his counsel." Appellant argues that these comments require that his conviction be reversed.

 Concerning the prosecutor's initial comment regarding the distortion of Gonzales' testimony, we conclude that appellant presents nothing for review. "To be timely an objection must be raised 'at the earliest opportunity,' or 'as soon as the ground of objection becomes apparent.'" *Johnson v. State*, 803 S.W.2d 272, 291 (Tex.Cr.App.1990), cert. denied, —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), overruled on other grounds, *Heitman v. State*, 815 S.W.2d 681, 685 (Tex.Cr.App.1991). Appellant waived any error by objecting only after the second comment was made.

Concerning the second comment about the distortion of Dickerson's testimony, the record reveals that the subject of the comment and objection was Dickerson's testimony about exhibit 61C. During closing argument, appellant's attorney, in reference to the letter wherein appellant admitted killing and robbing the decedent, stated that "It's not the truth of the words [in the letter] because Dr. Dickerson told you they are not true." Our review of Dickerson's testimony reveals, however, that he never stated that the content of the letter was false. During cross-examination by the prosecutor, Dickerson admitted that he did not know which of appellant's stories were true and which were false. Therefore, the prosecutor was correct in his argument that appellant's attorney had distorted Dickerson's testimony. Having concluded that appellant's arguments are without merit, we overrule point of error thirteen.

Appellant's points of error fifteen, sixteen, and seventeen are interrelated, each involving the trial court's refusal to submit requested instructions to the jury. In points of error fifteen, sixteen, and seventeen, respectively, appellant argues that the trial court erred in refusing to submit his proposed instruction on the definition of the term "deliberately," his proposed instruction on the definition of the terms contained in the second punishment issue, and in refusing to submit his proposed instruction regarding mitigating evidence. The State responds that there was no mitigating evidence that would require a special instruction and that the instructions submitted adequately addressed the subject matter of each of appellant's requested instructions.

Addressing point of error fifteen, even though the trial court was not required to instruct the jury on the definition of "deliberate," *Morin v. State*, 682 S.W.2d 265, 270 (Tex.Cr.App.1983); *Russell v. State*, 665 S.W.2d 771, 780 (Tex.Cr.App.1983), cert. denied, 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984), the trial court did instruct the jury that "deliberate means something more than intentional and something less than premeditation, and is a conscious decision involving a thought process which embraces more than mere will to engage in the conduct." Appellant requested, however, that the trial court instruct the jury that:

Deliberately means a manner of doing an act characterized by or resulting from careful and thorough consideration; characterized by awareness of the consequences; willful, slow, unhurried, planned and premeditated and steady as though allowing time for decision. The term "deliberately" therefore has a meaning different and distinct from the term "intentionally." You have already found that the murder was committed intentionally because intent was an element of the crime of capital murder. You must now decide whether the defendant's conduct causing death was deliberate, as well as, intentional. If you have a reasonable doubt about whether his conduct was deliberate or merely intentional, you must answer Special Issue # 1 "no," even if you are certain that he intentionally caused the victim's death.

■■■■ Appellant's instruction equated "deliberately" with "planned and premeditated." To be deliberate, however, conduct need only arise from a conscious decision to act after at least brief consideration. *Narvaiz v. State*, 840 S.W.2d 415, 424 (Tex.Cr.App.1992). Moreover, "[t]he statutory requirements that appellant's conduct be committed *deliberately* does not mean that it must be a *premeditated* act." *Granviel v. State*, 552 S.W.2d 107, 123 (Tex.Cr.App.1976)

(Emphasis in original), cert. denied, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977). Additionally, the trial judge in this case went beyond what this Court has required by giving the jury what is apparently a dictionary definition of "deliberately." We are not prepared to say that such a definition is erroneous and overrule appellant's point of error fifteen.

■■■■ Addressing point of error sixteen, we observe that appellant's requested instruction sought to instruct the jury on the definition of the terms "probability" and "criminal acts of violence." This Court has already held, however, that a trial court need not define "deliberately; probability; criminal acts of violence; [and] continuing threat to society ... in its charge to the jury during the punishment stage of a capital murder trial." *King v. State*, 553 S.W.2d 105, 107 (Tex.Cr.App.1977), cert. denied, 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 793 (1978). Accordingly, we overrule appellant's point of error sixteen.

In point of error seventeen, appellant argues that the trial court erred in refusing to submit his requested instruction on mitigating evidence. During the trial, appellant introduced evidence that he (1) had twice been abandoned as a child, (2) had suffered some child abuse,[13] (3) had been a good son for his adoptive mother, (4) had had a metal plate inserted into his skull at age ten, (5) had a low-average intelligence quotient (I.Q.),[14] and (6) had difficulty trusting people due to his paranoid personality. Appellant claims that "[n]owhere did the instructions provide the jury with a vehicle for expressing its reasoned moral response to the evidence and rendering its sentencing decision." In support of this position, appellant directs our attention to the case of *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

■■■■ As we have interpreted *Penry*, a capital sentencing scheme offends no federal

---

**13.** The record is devoid of any information concerning the depth and breadth of the child abuse.

**14.** *Penry* implies that a person with an I.Q. of 70 or below is presumptively retarded. *Penry*, 492 U.S. at 308, n. 1, 109 S.Ct. at 2941, n. 1. Appel-

lant herein presented no evidence of his actual I.Q., but only that his I.Q. was "low-average, ... in the 15th percentile," and that "[a]bout 80% of the people walking around [were] brighter" than him.

constitutional provisions if the scheme both allows the jury to consider relevant mitigating evidence and provides the jury some means of expressing a reasoned moral response to that evidence in making an individualized assessment of punishment. *Goss v. State,* 826 S.W.2d 162, 165 (Tex.Cr.App.1992). In analyzing a *Penry*-type claim, we look to see if the evidence presented at trial is specifically relevant to a defendant's "moral culpability," i.e. whether the evidence provides a basis for concluding that the defendant is less deserving of capital punishment. *Id.* at 165. If the relationship between the particular case's evidence and the special issues is such that the special issues provide no means for the jurors to respond in a morally reasoned way, the statute is unconstitutional as applied. *Id.* From this, a defendant is entitled to an additional instruction only if the evidence is relevant to the case in a manner that is beyond the scope of the special issues. *Id.*

■ All of appellant's evidence fell within the ambit of the second special issue. All of this evidence related to appellant's past history and personality and pertained to appellant's character and propensity for constituting a future danger to society. *Goss,* 826 S.W.2d at 166; *Earhart v. State,* 823 S.W.2d 607, 632 (Tex.Cr.App.1991); *Ex Parte Baldree,* 810 S.W.2d 213, 217 (Tex.Cr.App.1991). Unlike Penry's evidence of child abuse and brain damage, appellant's evidence "does not tend to excuse or explain his criminal act, ..." *Lackey v. State,* 819 S.W.2d 111, 134 (Tex.Cr.App.1989). See also *Mines v. State,* 852 S.W.2d 941, 950–51 (Tex.Cr.App.1992); *Nobles v. State,* 843 S.W.2d 503, 506 (Tex.Cr.App.1992). Concerning appellant's evidence of having been a good son for his adoptive mother, the Supreme Court has recently decided that such evidence of "positive character traits" does not require the trial court to submit a *Penry* instruction to the jury. *Graham v. Collins,* — U.S. —, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993). Writing for the majority, Justice White stated, · ·

> [W]e are not convinced that *Penry* could be extended to cover the sorts of mitigating evidence Graham suggests without a wholesale abandonment of *Jurek* [*v. State,*

428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929] and perhaps also of *Franklin v. Lynaugh, supra* [487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155.] As we have noted, *Jurek* is reasonably read as holding that the circumstance of youth is given constitutionally adequate consideration in deciding the special issues. We see no reason to regard the circumstances of Graham's family background and positive character traits in a different light. Graham's evidence of transient upbringing and otherwise nonviolent character more closely resembles Jurek's evidence of age, employment history, and familial ties than it does Penry's evidence of mental retardation and harsh physical abuse.

*Id.* at ——, 113 S.Ct. at 902. Therefore, we conclude that appellant was not entitled to an additional instruction regarding mitigating evidence. The jury's assessment of all of appellant's relevant evidence could be expressed through the second special issue.

■ Moreover, appellant's requested instruction includes the following language:

> If you decide that an aspect of the defendant's character and record or circumstances of the crime is a mitigating circumstance, you must not give it aggravating effect. Thus, if in your judgment, a mitigating circumstance independently calls for a life sentence even though it also tends to support a "yes" answer to a Special Issue, you must not answer the Special Issue "yes," but rather you either answer it no or you may use it as a basis for a vote for mercy and write the word "life" in your verdict form.

This language constitutes an incorrect statement of the law. *Penry* requires only that, in an appropriate case, the jury be "provided with a vehicle for expressing its 'reasoned moral response.'" 492 U.S. at 328, 109 S.Ct. at 2951–52. *Penry* does *not* require, however, that if a jury finds certain evidence both mitigating and aggravating in nature, then the jury must give the evidence *only* its mitigating effect.

For example, a jury ·could consider a defendant's youth as both a mitigating circumstance and an aggravating circumstance. Youth could be seen as mitigating because

maturity often coincides with age. A jury might be merciful towards a young defendant in the belief that the defendant could live a productive life after being incarcerated for an extended time. The same jury, however, might also view youth as an aggravating circumstance based upon the belief that the young defendant would simply use his remaining years to continue a life of crime. See *Graham v. Collins,* —— U.S. at ——, 113 S.Ct. at 917 (1993) (Souter, J. dissenting). Nothing in *Penry* would require this or any other jury faced with evidence which is both mitigating and aggravating to give the evidence only its mitigating effect. Likewise, neither could the jury be instructed that it must give the evidence only its aggravating effect. Since appellant's requested instruction on mitigating evidence incorrectly stated the law, we discern no error in the trial court's refusal to submit that instruction. Having concluded that appellant's arguments are devoid of merit, we overrule his point of error seventeen.

The judgment of the trial court is AFFIRMED.

OVERSTREET and MALONEY, JJ., concur in the result.

CLINTON, J., dissents.

BAIRD, Judge, concurring.

For the following reasons, I concur in the disposition of appellant's sixth point of error and otherwise join the opinion.

### I.

To resolve appellant's point of error six, the plurality finds appellant's complaint at trial differed from his complaint on appeal. Citing *Rezac v. State,* 782 S.W.2d 869 (Tex.Cr.App.1990), the plurality holds appellant failed to preserve his complaint for review.[1] I disagree.

The plurality's reliance upon *Rezac* is misplaced. Rezac objected to the admission of a videotape contending, 1) the State had no probable cause to videotape him, and 2) his

request for counsel was refused. *Rezac,* 782 S.W.2d at 870–871. The Court of Appeals reversed, holding evidence of Rezac's invocation of his right of counsel was erroneously placed before the jury. *Rezac v. State,* 722 S.W.2d 32, 33 (Tex.App.—Dallas 1986). We reversed, holding:

> ... Thus, appellant's objection at trial failed to state the theory relied upon by the Court of Appeals. Because the trial judge did not have an opportunity to rule on a motion to quash based on the jury making impermissible inferences from appellant's invocation of his right to counsel, nothing is presented for appellate review.

*Rezac,* 782 S.W.2d at 871.

Our holding in *Rezac* is based upon *Purtell v. State,* 761 S.W.2d 360 (Tex.Cr.App.1988), wherein we stated:

> ... In order to perfect an issue for appeal, an objection is "required to inform the trial judge of the basis of the objection and afford him the opportunity to rule on it."
> ... In addition, the objection should "afford opposing counsel an opportunity to remove the objection or supply other testimony."

*Purtell,* 761 S.W.2d at 365–366, quoting *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Cr.App.1977). Therefore, before reaching the merits of a point of error an appellate court must determine whether the point of error comports with the trial objection. If so, the trial judge had the opportunity to rule on the objection and opposing counsel could have cured any error.

### II.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R.Crim.Evid. 401. Except as may be provided for in the Constitution, our statutes or

---

1. Specifically, the plurality holds:

 At trial, appellant objected to the introduction of exhibit 71 solely on the basis of relevancy. On appeal, however, appellant argues that "the introduction of a picture of [the dece-

 dent's] wife and child could only have been an attempt ... to show the character of the decedent as a decent family man." When the complaint on appeal differs from that made at trial, the error is waived.
 Majority Opinion at 98 (citation omitted).

rules, all relevant evidence is admissible. Tex.R.Crim.Evid. 402. Conversely, irrelevant evidence is inadmissible. *Id.* Nevertheless, relevant evidence may be excluded if substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Tex.R.Crim.Evid. 403.

In *Montgomery v. State,* 810 S.W.2d 372 (Tex.Cr.App.1990) (Opinion on rehearing), we held an objection to the relevancy of evidence properly preserves the issue for appeal. *Montgomery,* 810 S.W.2d at 387. *Cf., Cohn v. State,* 849 S.W.2d 817, 821 (Tex.Cr.App. 1993) (Campbell, J., concurring) ("bolstering" objection insufficient to invoke Rule 403 analysis). Although *Montgomery* concerned the admissibility of extraneous offenses, we have held it governs the admissibility of evidence in general. *Long v. State,* 823 S.W.2d 259, 271 (Tex.Cr.App.1991). However, an objection to relevancy is insufficient to preserve the issue for appeal if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. A further objection based upon Rule 403 is now required. *Montgomery,* 810 S.W.2d at 388.

### III.

Appellant contends the trial judge erred in admitting State's exhibit 71.[2] At trial, the State tendered two photographs of the deceased. State's exhibit 46 depicted the deceased as he appeared before the autopsy. State's exhibit 71 depicted the deceased with his wife and child. Appellant objected:

> [Appellant's Counsel]: As to the State's proffer of State's exhibit 71 we object to it. *It's not relevant to this proceeding.* There's already a picture of [the deceased] in evidence....
>
> [Trial Judge]: This [State's exhibit 46] isn't in.
>
> [Appellant's Counsel]: No. No, that's not.
>
> [Trial Judge]: It's [State's exhibit 46] tendered. It's not in evidence.

2. Appellant's point of error six states:

> [Appellant's Counsel]: We're object to it [State's exhibit 71] because there already is another one.
>
> [Trial Judge]: You object to 71?
>
> [Appellant's Counsel]: Yes. *On relevancy.*

On appeal appellant continues to complain of the ruling on State's Exhibit 71:

> There was absolutely *no relevance* of the portion of State's No. 71 depicting the decedent's wife and child to the issue of whether or not Appellant was guilty of capital murder as alleged in the indictment. As pointed out by Appellant, the introduction of a picture of his wife and child *was in fact irrelevant* and obviously could only have been an attempt on the part of the State to show the character of the decedent as a decent family man. While such may have been true, *it was clearly not relevant* to the issue of guilt or innocence.
>
> \* \* \* \* \* \*
>
> ... the purpose of the photograph of the decedent together with his family was to arouse and inflame the jury against Appellant. The testimony *was irrelevant to any issue* before the jury and was not proper for any purpose.

Appellant's Brief pg. 24.

Appellant's objection informed the trial judge of the basis of his objection, the trial judge ruled on the objection and the State was given an opportunity to cure any error. *See, Purtell, supra, and, Zillender, supra.* As appellant presents the same complaint on appeal as he made at trial, *Rezac* is inapplicable.

### IV.

The State contends appellant failed to state specific grounds for his objection under Tex.R.App.P. 52(a). While appellant's objection could have been better stated, we have held that when the "correct ground of exclusion was obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection." *Zillender,* 557 S.W.2d at 517. *See, Lankston v. State,* 827 S.W.2d

> The Trial Court erred in admitting State's Exhibit No. 71, evidence of the character of the deceased.

907, 909 (Tex.Cr.App.1992); *and,* Tex. R.App.P. 52(a) (specific grounds for objection must be stated "if the specific grounds were not apparent from the context"). Here, by viewing the proposed exhibits, and the argument of counsel, the grounds for appellant's objection are apparent.[3] Appellant's objection to the relevancy of State's Exhibit 71 was sufficient to preserve error as to any violation of Rule 401.

However, appellant's relevancy objection did *not* preserve error as to any violation of Rule 403. Whether the probative value of State's exhibit 71 was substantially outweighed by the danger of unfair prejudice is not before the Court because there was no such objection at trial. *See, Long,* 823 S.W.2d at 271; *and, Montgomery,* 810 S.W.2d at 388.

### V.

Evidence of the deceased's good character, unless attacked by the defense, is irrelevant. *Armstrong v. State,* 718 S.W.2d 686, 702 (Tex.Cr.App.1985) (opinion on rehearing) (Testimony of deceased's good character "was irrelevant to any issue before the jury and was not proper rebuttal"). *See also, Hatley v. State,* 533 S.W.2d 27, 29 (Tex.Cr. App.1976). The State does not contend State's Exhibit 71 makes the existence of any consequential fact more or less probable. Further, the State does not direct our attention to, nor have we found, any instance in the trial where the character of the deceased was questioned. State's exhibit 71 clearly was an attempt to convey to the jury the character and circumstances of the deceased. Such evidence does not tend to make any consequential fact more or less probable. Therefore, the trial judge erred in admitting State's Exhibit 71.

### VI.

The State contends appellant waived the error because photographs of the deceased's family had previously been admitted without objection. Prior to the admission of State's Exhibit 71, the deceased's wallet was introduced into evidence without objection. The wallet contained photographs of the deceased's mother, sisters, wife and children. Each photograph was identified and discussed before the jury without objection from appellant.

In *Stoker v. State,* 788 S.W.2d 1 (Tex.Cr. App.1989), we held:

It is well established that when ... the same evidence is introduced from another source, without objection, the defendant is not in position to complain on appeal.

*Id.,* 788 S.W.2d at 12. *See also, Boles v. State,* 598 S.W.2d 274, 279–280 (Tex.Cr.App. 1980) ("Where facts complained of are admitted without objection by other competent evidence, no reversible error is presented."); *Armstrong,* 718 S.W.2d at 701; *Havard v. State,* 800 S.W.2d 195, 205 (Tex.Cr.App.1989); *and, Womble v. State,* 618 S.W.2d 59, 62 (Tex.Cr.App.1981). Because other photographs of the deceased and his family were admitted without objection, the error in the admission of State's exhibit 71 was waived.

With these comments, I concur.

MILLER, J., joins this opinion.

---

**3.** In *Lankston, supra,* we stated:
 The standards of procedural default ... are not to be implemented by splitting hairs in the appellate courts. As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it. ... [Appellate courts] should reach the merits of those complaints without requiring that the parties read some special script to make their wishes known. *Lankston,* 827 S.W.2d at 909.