**Modified and Affirmed and Opinion Filed December 7, 2023**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00879-CR

**DEMETRIUS DEWAYNE THOMPSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F19-75626**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Breedlove
Opinion by Justice Breedlove

Appellant Demetrius Dewayne Thompson was convicted of capital murder after a bench trial and sentenced to life imprisonment. Appellant appeals, complaining that the evidence was legally insufficient to support the verdict. We affirm the trial court's judgment as modified.

### I.    BACKGROUND

On Saturday, May 27, 2018, Dominique Torres-Williams was sitting in a car on her street when she heard glass shatter and saw flames shooting out of the duplex located at 4934 Berridge Lane. The fire department was called at 12:08 a.m. on

Sunday, May 28, 2018, and Torres-Williams called 911 at 12:12 a.m. At trial she testified that she did not know the owner of the house and did not see anyone exiting the house. Dallas Fire and Rescue was dispatched to the house and discovered the body of the resident, Eric Moore, inside. Moore's neighbor, Jose Nava, testified that he lived in the same duplex building as Moore sharing an interior wall, and that on the night of Moore's death, he heard a "loud commotion" from Moore's house at approximately 11:00 p.m.

Although the body was badly burned, the medical examiner, Dr. Stephen Lenfest, determined that the cause of death was homicide after finding two gunshot wounds which traveled through Moore's neck and into his spinal cord. Lenfest also noted that because no soot was found in Moore's airway, Moore could not have been breathing at the time the house caught fire. Arson investigators located a shell casing in the room where Moore's body was found as well as an additional shell casing approximately 15 to 20 feet away. Investigators could not determine the cause of the fire, but they could not rule out the possibility of arson. Investigators determined that the room the body was found in was the fire's point of origin.

Moore's neighbor, Kitzia Garza, had a camera mounted on her front door which faced the alleyway behind the houses; surveillance footage from the camera provided investigators with key information regarding Moore's movement prior to the fire. Jeffrey Loeb, a Dallas Police Department homicide detective, found that the surveillance footage showed that Moore's vehicle, a silver Chevy Impala,

traveled northbound on Berridge Lane towards his home at 8:28 p.m., and that the door to Moore's home was unlocked at 8:33 p.m. Video also showed Moore's car traveling along Berridge Lane at 10:05 p.m., 11:53 p.m., 12:01 a.m., 12:03 a.m., and finally at 12:07 a.m. Moore's vehicle disappeared after the fire started and was never recovered, and the theft of Moore's car turned the murder investigation into a capital murder investigation.

Moore's phone records showed that on the night he died, his last call was made at 11:12 p.m. to a number belonging to appellant. Appellant's phone pinged a tower near Moore's home around 11:13 p.m. that night. Appellant's cell records also showed that just hours after Moore's death, appellant had traveled from Arlington to Dallas, then arrived in Louisiana at 4:33 a.m. on May 28, 2018. Appellant did not own a car at that time.

Approximately a year after Moore's death, police located appellant in Louisiana, and he voluntarily agreed to an interview. At that time, appellant stated that he barely knew Moore and had sold him marijuana on occasion. He told police Moore was a gay man who had made sexual advances which appellant had rebuffed and that Moore had a jealous boyfriend. Loeb learned during the course of his investigation that Moore was attracted to straight men and would attempt to get them to engage in homosexual activity with him. Appellant met with Moore on May 27, 2018 at a McDonald's to sell him marijuana but was unable to tell police which McDonald's location. He told police that Moore had dropped him back off at

McDonald's and that he had called a ride, but appellant's phone records did not reflect such a call was ever made. Appellant then told police he used Moore's phone, but that phone also did not have record of any such call.

When asked where he was living at the time of the murder, appellant stated that he "can't really remember," but that he was staying in Arlington with his girlfriend, Keisha. When asked, appellant could not give police Keisha's last name or any details regarding her appearance, which left Loeb with the impression that appellant was withholding information. Appellant initially told police he had never been to Moore's home but later told police that he had "been near it," and then eventually he admitted that he had been inside Moore's home once, on the day of the murder. He told police that he had seen Moore's boyfriend come down the stairs that night while he was at Moore's house. Appellant also told police that he arrived in Louisiana in June of 2018 but could not provide police with any details about how he arrived there. Appellant had lived in Dallas for nine years before the night of the murder.

Appellant also told police that he had never driven Moore's vehicle but later in the same interview told police that he could not be sure but that he would not be shocked if another person had seen him driving the vehicle. Once appellant was arrested, police conducted a second interview with him. Appellant told police at that time that a girl gave him a ride from Dallas to Louisiana, but he could not remember her name. According to appellant, he and Moore drank and smoked marijuana the

night of the murder, but the toxicology report showed no alcohol or drugs in Moore's system. Loeb testified that appellant "went back and forth a few times" with his version of events.

Appellant was tried before the court on August 30, 2022. The charge of capital murder was presented to the court. The court found appellant guilty of capital murder as charged in the indictment. Appellant moved for a new trial on September 2, 2022, which was denied by operation of law. TEX. CODE CRIM. PROC. ANN. art. 45.038(b). This appeal followed. In one issue, appellant complains that the evidence was legally insufficient to support the verdict.

## II. STANDARD OF REVIEW

In determining whether the evidence is sufficient to support a criminal conviction, we apply well-established standards. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979). We view the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found all the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 313; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). In a bench trial, the trial judge, as the fact finder, is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). When there is conflicting evidence, we presume the fact-finder resolved those conflicts in favor of the verdict and defer to that resolution so long as it is supported by the

evidence. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We also defer to the trier of fact's determinations of witness credibility and the weight to be given their testimony. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. Our role as an intermediate appellate court is restricted to guarding against the "rare occurrence when a factfinder does not act rationally." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (quoting *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009)).

### III.   DISCUSSION

A person commits the offense of capital murder if he intentionally or knowingly causes the death of an individual and he commits the murder in the course of committing or attempting to commit a robbery or arson. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(2). A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a). A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. *Id*. § 29.02(a). The phrase "in the course of committing" has the same meaning under both the robbery and capital murder statutes: conduct occurring in an attempt to commit, during the commission of, or in immediate flight after the attempt or commission of, the underlying offense. *Id.* § 29.01(1); *Riles v. State*, 595 S.W.2d 858, 862 (Tex. Crim. App. 1980).

–6–

A person commits arson if "he starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage any building or habitation, while "knowing that it is within the limits of an incorporated city or town," or "knowing that it is located on property belonging to another," or "when the person is reckless about whether the burning or explosion will endanger the life of some individual or the safety of the property of another." *Id.* § 28.02(a)(2)(A), (D)-(F).

"A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* at § 6.03(b). "A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* at § 6.03(c).

In his brief, appellant argues that the evidence is legally insufficient to support the verdict because, in summation, there was no direct evidence of appellant's guilt.

However, circumstantial evidence alone can support a judgment, so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018).

The evidence shows that appellant was with Moore shortly before Moore's death, that appellant was near Moore's duplex around 11:00 p.m., the time when Moore's neighbor heard a loud disturbance and shortly before Moore's death, and that appellant left the Dallas area, where he had been living for nine years, shortly after Moore died and went to Louisiana, where he remained until his arrest. The evidence also showed that Moore's car disappeared at approximately the same time appellant left for Louisiana, appellant did not own a car, and he could not provide details on how he traveled to Louisiana. Unexplained flight from a crime scene has long been deemed indicative of consciousness of guilt. *Santos v. State*, 961 S.W.2d 304, 305 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (citing *Cawley v. State*, 310 S.W.2d 340, 342 (Tex. Crim. App. 1957)). The trial court could have rationally concluded that appellant fled Dallas because he murdered Moore and was conscious of his guilt of murder, arson, and robbery. *See id.*

Loeb also testified to the multiple inconsistencies and gaps in appellant's story during his two police interviews. The finder of fact may infer the requisite intent from a defendant's motive, his attempts to conceal evidence, his implausible explanations to the police, and the extent of the victim's injuries. *Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018). This remains true even when the

element of appropriation takes place after the murder. *Russo v. State*, 228 S.W.3d 779, 793 (Tex. App.—Austin 2017, pet. ref'd) (citing *Zimmerman v. State*, 860 S.W.2d 89, 93 (Tex. Crim. App. 2010)) (holding that the State presented sufficient evidence that the murder occurred in the course of committing robbery because the evidence showed that money and jewelry were taken from the victim's home immediately after the victim was attacked). The judge, rather than appellant, is the determiner of the credibility of the witnesses and their testimony, and the court was entitled to believe the testimony of Detective Loeb over the conflicting and contradictory testimony of appellant. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2008). Based on the evidence in the record, any rational trier of fact could have found all the essential elements of the offense were proven beyond a reasonable doubt. *See Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018). We overrule appellant's sole issue.

## IV.   MODIFICATION OF JUDGMENT

The State argues in its sole cross-point that the judgment should be modified to reflect that the trial court sentenced appellant to life without parole.

Appellate courts may modify a trial court's judgment and affirm it as modified. See TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). This Court "has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas

–9–

1991, writ ref'd). Appellate courts may reform trial court judgments where "the evidence necessary to correct the judgment appears in the record." *Id.* Here, the judgment reflects the trial court sentenced appellant only to life in prison. In a capital murder where the State does not seek the death penalty, the only two punishments possible are life or life without parole; life is required when the defendant was younger than eighteen years of age when he committed the offense, and life without parole is required when the defendant was eighteen years of age or older when he committed the offense. See TEX. PENAL CODE ANN. § 12.31(a)(1)-(2). The record reflects appellant was thirty-four years of age at the time he committed the offense. Therefore, the judgment should be modified to reflect appellant's sentence as life without parole.

## V. CONCLUSION

We modify the judgment to reflect that appellant was sentenced to life without parole and affirm the trial court's judgment as modified.

/Maricela Breedlove/

220879f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

MARICELA BREEDLOVE
JUSTICE

–10–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DEMETRIUS DEWAYNE
THOMPSON, Appellant

No. 05-22-00879-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F19-75626.
Opinion delivered by Justice
Breedlove. Justices Carlyle and
Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Remove "Life" and insert "Life without Parole"

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 7th day of December, 2023.