## C. D. WILLIAMS v. THE STATE.

### No. 5486.   Decided February 18, 1920.

#### 1.—Forgery—Deposit Slip—Indictment.

Where, upon trial of forgery, the indictment charged that the defendant forged a duplicate deposit slip from a bank, including appropriate *innuendo* averments, the same was sufficient to charge the offense.  Following: Martin v. State, 85 Texas Crim. Rep., 89, 209 S. W. Rep., 668, and other cases.

#### 2.—Same—Insufficiency of the Evidence—Comparison of Handwriting.

Where, upon trial of forging a duplicate deposit slip issued by a bank upon a receipt of a deposit for money, the evidence was insufficient to sustain the conviction, and the evidence being wholly circumstantial resting partly upon comparison of handwriting the conviction cannot be sustained.

#### 3.—Same—Evidence—General Reputation—Impeaching Witness.

Where, upon trial of forgery, the evidence as to general reputation for honesty of the defendant was admissible, the State had the right in rebuttal to show that some years back defendant's business house at one time burned, and that suspicion of arson was aroused against him, and that his reputation in the community where he formerly lived was bad, but such testimony could not be used to prove his guilt of the offense involved in this appeal, but only to discredit him.

Appeal from the District Court of Palo Pinto.  Tried below before the Hon. J. B. Keith, judge.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Preston Martin,* for appellant.—On question of instruments subject of forgery: Young v. State, 206 S. W. Rep., 197; Black v. State, 61 id., 478.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

MORROW, JUDGE.—The conviction is for forgery.  The instrument charged to have been forged is a duplicate deposit slip, it being averred that the First National Bank of Santo, Texas, received a deposit of $190 for the account of Minnie Williams, and issued to her a deposit slip dated the thirteenth day of December, 1918.  The allgations show that the slip was issued by Paul Bryan, an officer of the bank, and that he endorsed on the receipt his initials "P. B.;" that the slip was altered by the appellant by changing it so that the date appeared December 7, and the amount of the deposit $110.

The allegations of the indictment, including appropriate *innuendo* averments which were made, were sufficient to charge an offense. The proposition that a duplicate deposit slip could not become the subject of forgery does not meet with our assent. The contrary was specifically declared in a well considered opinion by the Supreme Court of Missouri. See State v. Jackson, 120 S. W. Rep., 70. This view accords with our own. See Martin v. State, 85 Texas Crim. Rep., 89, 209 S. W. Rep., 668, and cases referred to; see also Cyc. vol. 9, p. 1384, note 61.

The jury acquitted the appellant of passing a forged instrument, and we think the evidence of forgery not conclusive of the guilt of appellant. The appellant was a farmer, about 57 years of age. He and his wife resided in Santo in Palo Pinto County, and funds belonging to them were deposited in the First National Bank of Santo in the name of Mrs. Minnie Williams, the wife of the appellant. Appellant had also an account in a bank at Fort Worth. Appellant, while residing at Santo, drew a check upon his wife's account in the First National Bank for $107, using it for the purchase of a bale of cotton. Subsequently, he moved to Weatherford, in Parker County, and on going to Weatherford he opened an account with the bank there by giving that bank a check upon the First National Bank of Santo for $338.74. This check, when paid by the bank at Santo, left Mrs. Minnie Williams' account overdrawn $109.80. This overdraft was drawn to appellant's attention some time in February by a phone message from an officer in the bank at Santo, the appellant at the time requesting the officer to make a statement of his account, and stating that if there was anything wrong about it he would adjust it. Appellant, after receiving the statement, wrote the bank at Santo the following letter:

"Weatherford, Texas, Feb. 10, 1919.

"Mr. Paul Bryan,
  Santo, Texas.
Dear Sir and Friend:

Referring to our conversation over the telephone regarding an overdraft of $109.80 against my wife's account in your bank. I have received your statement and have carefully checked it with my check book and deposit slip. According to my figures instead of there being an overdraft, there seems to be a balance to my wife's credit of twenty cents. The trouble seems to be that she wasn't given credit for $110 deposited on December 7th. I have the deposit slip covering the above.

Yours truly
C. D. WILLIAMS."

The bank replied, requesting him to send the deposit slip to Santo for inspection, and the appellant accordingly sent it to another banker, Mr. Hatchett. It seems that about ten days later

41—86—T. C.

Mr. Hatchett was required to deliver the deposit slip to the prosecuting attorney, and a prosecution was established. According to the testimony of the appellant and his wife, after the prosecution was established, Mrs. Williams told the appellant that she had changed the deposit slip; that is, that she had, some time after the removal to Weatherford, taken the deposit slip for $190, dated the 13th of December, and erased the 13 and made a 7 in lieu of it, and erased the $190, and converted it into $110; that her reason for doing so was that she had received certain sums of money from the United States Government on account of her son who was a U. S. soldier in France, and that the $110 and the date mentioned coincided with the amount that she at that time had on account of her son, and that the change was made as a memorandum, and the slip then hung upon a hook in the kitchen used by her for filing papers. When the appellant received this information, he paid the overdraft. His wife testified as a witness that she had made the change in the deposit slip mentioned, and had not advised her husband of the change until after his arrest. It was shown without dispute that she had received certain sums of money from the Government on account of her son.

Appellant testified that at the time he made the check for his balance in the Santo Bank, he had forgotten that he drew the check for $107 in payment of the bale of cotton upon his wife's account at Santo, but believed that he had drawn it upon his bank at Fort Worth. Bryan, the officer of the bank at Santo, testified on behalf of the State as an expert witness on handwriting. There were before the jury at the time some checks and memoranda written by the appellant, admittedly in his handwriting, and based upon these the expert's testimony was given. He stated that the erasure of the date and amount on the deposit slip and their substitution were obvious to an ordinary observer; that the erasures were not complete, and the substitution in an ink of a different color. He testified to points of similarity in the figure 7 of the alleged spurious instrument and that upon a document in appellant's handwriting, and from this comparison testified that in his opinion they were each written by the same person.

The appellant, as stated before, testified in the case, and denied that he had altered the instrument; and went before the grand jury while it was investigating his case, and made there a sworn statement to that effect, which the State introduced in evidence, which coincides in substance with his testimony upon the stand and that of his wife. In this statement, he says that while he was checking up the account which the bank at Santo sent him upon his request, he found a deposit slip for $110 hanging on a hook in the kitchen of his residence, and he discovered that the statement furnished him by the bank did not include that deposit; that he had no knowledge of his wife having made the change, and sent

the slip to Santo for inspection, and as soon as he had learned from his wife that she had made the change for a memorandum, he remitted the amount of the overdraft.

We have a statute, Article 814, C. C. P., in which it is said:

"It is competent in every case to give evidence of handwriting by comparison made by experts, or by the jury, but proof by comparison will not be sufficient to establish the handwriting of a witness who denies his signature under oath."

This statute does not preclude the proof of forgery by circumstantial evidence; Branch's Annotated Texas Penal Code, sec. 1415; Batte v. State, 57 Texas Crim. Rep., 128; and similarity of handwriting in the alleged forged instrument, and others that may be legally used for comparison in a particular case may be one of the circumstances, but it has always been regarded as feeble. Jones v. State, 7 Texas Crim. App., 460. In the present instance, this is particularly so in that the opinion of the expert is based upon the similarity of but one figure. He claims that in the figure 7 upon the spurious instrument there was a peculiarity similar to that on the same figure in an admitted document.

There are other circumstances relied on by the State, but on the whole the evidence is not conclusive of appellant's guilt; does not make it appear with reasonable certainty. Particularly is this true when it is recalled that to be sufficient in the instant case it must meet the test applied to circumstantial evidence.

The evidence that the alteration was in appellant's handwriting was entirely inadequate; the instrument on its face bore unmistakable evidence of an alteration, with no indication of any effort to conceal that fact. The appellant's conduct in overdrawing his account is reasonably explained. That he had a bank account in Fort Worth in which he could have drawn the $107 check is not contradicted. Appellant's conduct in demanding a statement, and sending the altered deposit slip to Santo for inspection, are facts consistent with his theory of mistake, and not inconsistent with his innocence. His statement before the grand jury, made soon after his arrest, is in harmony with his testimony.

The reputation of appellant was put into the case, and some testimony adduced to the effect that his reputation for honesty and fair dealing at Strawn where he formerly lived was bad. Some of this testimony apparently went back as far as 1882, and in connection with the matter, it appeared that appellant's business house had at one time burned, and that suspicion of arson was aroused against him. There was no arrest, and he explained that his property was only partially insured, he having none on his building. We think as the record is presented this testimony was legitimate, and it doubtless had a potent effect in discrediting appellant, but it cannot be used to support the conviction here in the absence of facts

of sufficient cogency to prove his guilt of the offense involved in this appeal.

The judgment is reversed, and the cause remanded.

*Reversed and remanded.*