Encarnacion CAMACHO, Appellant,

v.

The STATE of Texas, Appellee.

No. 327–87.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 15, 1989.

David C. Guaderrama, Bruce W. Weathers, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. & Robert Dinsmoor, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty. & Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Justice.

Appellant was convicted by a jury of the offense of murder. V.T.C.A. Penal Code § 19.02(a)(1).[1] The court assessed punishment at twelve years confinement in the Texas Department of Corrections. The El Paso Court of Appeals reversed the conviction, holding that the evidence was insufficient and ordered an acquittal. Camacho v. State, No. 08–86–00111–CR (Tex.App.—El Paso Feb. 18, 1987) (not published). We granted the State's Petition for Discretionary Review to consider whether or not the court below erred in holding that proof of handwriting could not be made by comparison only where the appellant denied his handwriting under oath but did not deny any signature pursuant to Article 38.27 V.A.C.C.P. The State claims in essence that the Court of Appeals misconstrued the import of Art. 38.27 supra, and that such

misconstruction presented an important question of state law which has not been settled by this Court. See Rule 200(c)(2) & (4) Tex.R.App.Pro. We will affirm the judgment of the Court of Appeals.

Briefly the facts are as follows: the body of the deceased, a seventy-seven year old woman, was discovered in her bedroom on the morning of April 28, 1985. The deceased died of ligature strangulation—an apron had been knotted around her throat. A handwritten, *unsigned* (emphasis added) note was found on the body of the deceased. The note was written in Spanish and requested forgiveness for the murder. There was no sign of forced entry into the deceased's residence. Appellant lived in a garage behind the deceased's home and had access to the house for use of the kitchen and bathroom facilities. A knot in the apron used to strangle the deceased was similar to the type of knot appellant used to secure the perimeter of his garden.

A handwriting-comparison expert compared the handwriting on the note with handwriting samples provided by appellant. He testified that there was a high probability that the note was written by appellant. When appellant took the stand he testified under oath, pursuant to Art. 38.27 supra, that the handwriting on the note was not his.

The Court of Appeals, in analyzing the sufficiency of the evidence to determine the legal validity of the handwriting comparison, relied on Article 38.27 V.A.C.C.P. which provides:

It is competent to give evidence of handwriting by comparison made by experts or by the jury. Proof by comparison only shall not be sufficient to establish the handwriting of a witness who denies his signature under oath.

The Court of Appeals found that appellant's denial of the writing on the note was sufficient to invoke Art. 38.27. Since there was no evidence offered by the State to corroborate the expert's testimony, the Court of Appeals reasoned: "There is in-

---

1. V.T.C.A. Penal Code, § 19.02(a)(1) provides as follows:

A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual.

sufficient evidence to establish the handwriting in the present case. Absent the note, the remaining evidence connecting the appellant to the crime is scant at best." (slip op. pg. 433)

The State Prosecuting Attorney, in his Petition for Discretionary Review, argues that since the appellant did not deny his *signature*, the provisions of Art. 38.27 are inapplicable. The State further contends that the second sentence of Art. 38.27 is not ambiguous and should be strictly interpreted so as to require denial of a *signature* before the provision can come into play.

The appellant in his reply brief contends that Art. 38.27 should be interpreted broader than urged by the State. Appellant argues that "it defies reason to assume that the Legislature would intend that the statute, which proscribes handwriting comparison of a signed document to establish the writer's identity as against direct testimony to the contrary, would allow such comparison evidence to establish the writer's identity in a case where he did not sign the document." Appellant's reply brief at page 6.

In interpreting the meaning of Art. 38.-27, we note that the Legislature has used both the terms "handwriting" and "signature" within the language of the statute. A common requirement of statutory construction is for a court to attempt to effectuate the intent of the Legislature. Article 1.26 V.A.C.C.P. provides that:

The provision of this Code shall be liberally construed, so as to attain the objects intended by the Legislature ...

■ Texas courts have long held that, in determining the meaning of a word employed in a statute, the inquiry is not as to its abstract meaning, but as to the sense in which it is used when the legislative purpose so requires. A word may be given a broader or a narrower meaning than that which it has in ordinary usage. *Baldridge v. State*, 167 Tex.Cr.R. 519, 321 S.W.2d 309, 310 (1959). The rule is that a statute that is susceptible to more than one construction will be interpreted so as to secure the benefit intended. *Id.*[2]

■ In acquiring insight into the legislative intent in the drafting of this statute we must investigate the first enactment of the statute. Article 38.27 was originally enacted as Art. 667 of the first Code of Criminal Procedure.[3] Our first constitution after entering statehood provided as follows:

Within five years after adoption of this Constitution, the laws civil and criminal, shall be revised, digested, arranged, and published in such a manner as the Legislature shall direct; and a like revision, digest, and publication shall be made every ten years thereafter.

Tex. Const. of 1845 art. VII, § 16.

It was not until the Sixth Legislature that the Penal Code and Code of Criminal Procedure were actually adopted. These codes were codifications of the common law used in the courts of the day. Therefore, in ascertaining legislative intent we must examine the common law as it relates to authentication of hand written documents.

At early common law, the methods of proving handwriting by style were greatly discounted and strictly limited in their use. Before the disputed document could be considered as evidence, early cases required proof by a witness that: (1) he actually saw the defendant write the document or (2) he received letters from the defendant which he [defendant] treated as genuine. Wig-

---

**2.** In interpreting this statute, we note that neither the Code Construction Act, Chapter 311, Government Code, nor existing statutory provisions for the construction on laws set out in Chapter 312, Government Code, expressly apply to Art. 38.27 supra, since it has remained unchanged by revision or otherwise since 1856. For the general application of the Code Construction Act to the 1965 Code of Criminal Procedure see *Lindsey v. State*, 760 S.W.2d 649, 645 (Tex.Cr.App.1988).

**3.** Tex.Code Crim.Proc. art. 667 (1856) provided as follows:

It is competent in every case to give evidence of handwriting by comparison, made by expert or by the jury, but proof by comparison only shall not be sufficient to establish the handwriting of a witness who denies his signature.

The language of this statute has remained basically unchanged up to the present Code.

more on Evidence § 1992 (3d ed. 1940). The old common law rule provided that testimony by comparison or "comparison of hands", as it was more commonly known, was not admissible and this rule applied to all persons who had no previous knowledge of the hand [writing], but were shown specimens in court and asked to compare them with the disputed writing. *Id.*

The modern trend that eventually began developing was to allow comparison by an expert who had no previous knowledge of the defendant's handwriting. See generally Wigmore on Evidence supra, at § 1992 et seq. The Sixth Legislature, in codifying the common law use of comparison analysis for handwriting, included a limitation on the modern trend, by stating that if the defendant denied his signature, additional proof was required before the trier of fact could conclude that the writing was that of the defendant. Art. 667 supra.

Cases interpreting this statute have required that a denied writing be corroborated by other evidence tending to establish that the defendant was in fact the person whose handwriting appeared on the document. See *Newby v. State*, 384 S.W.2d 133, 135 (Tex.Cr.App.1964).

Although the State, in its Petition for Discretionary Review, points to some forty cases which discuss Art. 38.27, the State's Prosecuting Attorney readily concedes that only one of those cases is similar in its facts to the case at bar. See *Williams v. State*, 86 Tex.Cr.R. 640, 218 S.W. 750 (1920). However, the State concedes that *Williams* is inapplicable because the Court decided the case on the basis of general sufficiency rather than the requirements of Art. 38.27 supra.

The State does point to one case that supports the proposition which we will adopt today. See *Bird v. State*, 225 S.W. 749, 750 (Tex.Cr.App.1920). In *Bird*, supra, the Court stated:

> Our statute authorizes evidence of handwriting by comparison made by the jury, and specifically provides that such comparison shall be deemed insufficient to establish handwriting only when the party to whom the writing is attributed de-

nies such signature (*or writing*) under oath. Article 814, Vernon's C.C.P. [emphasis supplied]

While we agree with the State's conclusion that the language in *Bird* constitutes dictum, we nevertheless find it to be a common sense interpretation of the statute. We believe that the appellant in his reply brief correctly points out the flaw in the State's reasoning. If, in the instant case, the note found on the body of the deceased had been signed by appellant, and the appellant had denied under oath that the signature was his, the comparison testimony would have been insufficient in the face of appellant's sworn denial and the note could not have been considered as having been authored by the appellant. It would then follow from the State's argument that under the facts in the instant case the identity of the writer of an unsigned note, even in the face of a sworn denial, could be sufficiently proven by expert handwriting comparison testimony. We do not believe that the Legislature intended such a frivolous result. We therefore hold that the Legislature intended to create a broader definition under Art. 38.27, and we find that if a defendant denies either his signature or his handwriting under oath then the State must present other evidence tending to connect the defendant to the authorship of the disputed document. Cf. Art. 38.14 V.A.C. C.P.

■ Having found under Art. 38.27 that appellant effectively denied his handwriting under oath, we now turn to the other evidence present in the case that might corroborate the identity of the appellant. In this regard we borrow directly from the opinion of the court below and adopt it as our finding herein "Absent the note, the remaining evidence connecting the Appellant to the crime is scant at best. The aspect of access, the knot and the proximity of the Appellant's quarters do not establish the elements of the offense beyond a reasonable doubt. We hold there is insufficient evidence to establish the conviction." (slip op. page 433).

We affirm the judgment of the Court of Appeals.

McCORMICK, P.J., and W.C. DAVIS and WHITE, JJ., dissent.