

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-380-CR

BRADLEY CHANCE WELLS                                      APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

FROM COUNTY CRIMINAL COURT NO. 3 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

In one point, appellant Bradley Chance Wells appeals his conviction for driving while intoxicated (DWI), asserting that the trial court erred by denying his motion to suppress. We will affirm.

### II. FACTUAL BACKGROUND

At approximately 1:46 a.m. on a Saturday, Roanoke Police Officer Jean Ann Grey saw Wells's truck illegally parked in the parking lot of an apartment

---

[1]*See* Tex. R. App. P. 47.4.

complex located on Parish Lane between State Highway 377 and Roanoke Road. As Officer Grey began to approach the truck in her squad car, the driver of the truck, Wells, turned on the truck's headlights and exited the parking lot onto Parish Lane. Officer Grey followed Wells and watched him turn right onto Highway 377. She initiated a traffic stop based on her belief that Wells failed to signal a right turn onto Highway 377 within 100 feet of turning.[2] A driver who intends to turn commits a traffic offense if he does not signal continuously for at least the last 100 feet of movement before the turn.[3]

Upon exiting her squad car and approaching the truck, Officer Grey noticed that Wells's eyes appeared glassy and bloodshot, that his hands were shaking, and that he appeared nervous. She also detected a strong odor of alcohol coming from inside the truck. Upon questioning, Wells admitted that he had consumed alcohol earlier in the evening. Officer Grey then conducted a series of field sobriety tests on Wells, which he failed. The officer arrested Wells for DWI.

---

[2]We agree with the concurrence that the hypothetical facts proposed by the concurrence could be problematic. Those hypothetical facts, however, are not the facts here and do not control whether Officer Grey possessed reasonable suspicion that Wells had committed a traffic offense.

[3]*See* Texas Transp. Code Ann. § 545.104(b) (Vernon 1999).

2

### III. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de

3

novo.  *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.  *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings.  *Kelly*, 204 S.W.3d at 818–19.  We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.  *Id*. at 819.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings.  *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25.  We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling.  *Kelly*, 204 S.W.3d at 819.

4

## IV. MOTION TO SUPPRESS

In Wells's sole point, he contends that the trial court erred by overruling his motion to suppress because Officer Grey did not have reasonable suspicion to believe that a traffic violation had occurred.

### A. Reasonable Suspicion

A police officer has the authority to stop and temporarily detain a driver who has violated a traffic law. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *Armitage v. State*, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982). An automobile stop is justified when an officer has reasonable suspicion to believe that a traffic violation has occurred. *Goudeau v. State*, 209 S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Reasonable suspicion exists if the officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or will soon be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Once an officer makes a bona fide stop or arrest for a traffic offense, he can make additional arrests for any other offense unexpectedly discovered while investigating or questioning a motorist. *See Lemmons v. State*, 133 S.W.3d 751, 757 (Tex. App.—Fort Worth 2004, pet. ref'd).

5

The transportation code provides that the operator of a motor vehicle shall signal to indicate an intention to turn. Tex. Transp. Code Ann. § 545.104(a). An operator intending to turn right or left must signal continuously for not less than the last 100 feet of movement before the turn. *Id.* § 545.104(b). This requirement is mandatory and it therefore follows that failure to employ a vehicle's signal to indicate an upcoming turn constitutes a traffic offense. *Lemmons*, 133 S.W.3d at 757.

**B. Reasonable Suspicion to Support Officer Grey's Stop**

In the present case, Officer Grey testified that she stopped Wells after witnessing him commit "the traffic violation of not signaling the intent to turn within a 100 [sic] feet, as the statute requires." She did not know how long Wells signaled continuously before turning or how far he was from Highway 377 when he turned on his blinker. She explained that she was "not an expert on the distance" but that "he was [close] to the stop sign, it was definitely within a 100 [sic] feet." The officer testified that she had no way of knowing when Wells decided to turn right until he turned on his blinker.

Wells argued to the trial court and contends on appeal that a driver must possess the *intent* to turn before he is obligated to signal a turn under section 545.104. Under Wells's proposed interpretation of section 545.104, an officer would need some sort of notice or indication that a driver has an intention to

6

turn 100 feet before actually turning in order for the officer to have reasonable suspicion that the driver violated section 545.104.[4]  In this case, according to Wells, because Officer Grey testified that she had no way of knowing when Wells decided to turn, she lacked reasonable suspicion to believe that he was violating section 545.104.

When interpreting statutes, we seek to effectuate the intent or purpose of the legislators who enacted them.  *See Camacho v. State*, 765 S.W.2d 431, 433 (Tex. Crim. App. 1989).  If the statute is clear and unambiguous, the plain meaning of the words should be applied.  *Hines v. State*, 75 S.W.3d 444, 447 (Tex. Crim. App. 2002); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).  However, if an application of the plain language would lead to an absurd result that the legislature could not have intended, we may look to extra-textual factors to arrive at a sensible interpretation of the statute.  *See Hines*, 75 S.W.3d at 447; *Boykin*, 818 S.W.2d at 785–86.

Section 545.104 specifically provides that an operator shall use a signal to indicate an intention to turn and that "[a]n operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet

---

[4]During oral argument to this court, Wells suggested several indicators that an officer could look for to determine a driver's intention to turn, such as slowing the vehicle's speed, pulling the vehicle off to the side of the road, or driving in a turn-only lane.

7

of movement of the vehicle before the turn." Tex. Transp. Code Ann. § 545.104. The plain language of section 545.104(a) indicates that signals are mandatory when turning. *See Lemmons*, 133 S.W.3d 751 at 756; *Trahan v. State*, 16 S.W.3d 146, 147 (Tex. App.—Beaumont 2000, no pet.). Moreover, section 545.104 applies whenever the driver has an "intention to turn," not whenever a driver has an intention to turn *and such intention to turn exists 100 feet before he actually turns*. Tex. Transp. Code Ann. § 545.104(a); *see Krug v. State*, 86 S.W.3d 764, 766 (Tex. App.—El Paso 2002, pet. ref'd). If the legislature had intended to say, "A driver who intends to turn 100 feet before turning shall signal that intent to turn," it simply could have said so. Instead, the legislature provided that "[a]n operator intending to turn . . . shall signal continuously for not less than the last 100 feet of movement." Tex. Transp. Code Ann. § 545.104(b).

Our opinion in *Tucker v. State*, 183 S.W.3d 501 (Tex. App.—Fort Worth 2005, no pet.) provides some guidance. In *Tucker*, the officer stopped the appellant for failing to signal his intention to turn and found drugs in the car. The appellant argued that because the police officer did not have a clear view of the road for the entire 100 feet before the stop, no evidence supported the stop. *Id*. at 507. But in upholding the initial stop, this court noted that "the

8

officer's testimony was clear that *at least at the time the car reached the stop sign* the driver had not signaled to turn." *Id.*

Here, Wells turned right onto Highway 377; thus, it logically follows that he must have "intend[ed] to turn." *See* Tex. Transp. Code Ann. § 545.104(b). And Officer Grey testified that Wells did not signal continuously for the last 100 feet before he turned. Based on the plain language of the statute, Officer Grey did not need reasonable suspicion that Wells intended to turn 100 feet prior to his execution of the turn. *See id.* The fact that she witnessed Wells turn without signaling his intention to turn until within 100 feet of the stop sign was sufficient for her to form the reasonable suspicion that Wells had committed a traffic violation. *See Tucker*, 183 S.W.3d at 507.

Additionally, the State was not required to prove that Wells violated a traffic law or to prove every element of a specific offense, but only that Officer Grey reasonably believed that Wells was committing a traffic violation. *See McQuarters v. State*, 58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref'd); *Green v. State*, 93 S.W.3d 541, 544 (Tex. App.—Texarkana 2002, pet. ref'd); *Martinez v. State*, 29 S.W.3d 609, 611–12 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd); *see also Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) ("The reasonable suspicion determination is made by considering the totality of the circumstances."). The State only needed to elicit

9

testimony that Officer Grey knew sufficient facts to reasonably suspect that Wells had violated a traffic law. *See Garcia*, 43 S.W.3d at 530. In light of the fact that Officer Grey witnessed Wells turn without signaling continuously for 100 feet prior to turning, Officer Grey could have rationally inferred that Wells was committing a traffic violation. *See id.*; *McQuarters*, 58 S.W.3d at 255. Consequently, viewing the evidence in the light most favorable to the trial court's ruling, we hold that Officer Grey testified to specific, articulable facts that would lead her to reasonably conclude that Wells was committing a traffic violation. *See Castro*, 227 S.W.3d at 737. We therefore hold that the trial court did not err by denying Wells's motion to suppress, and we overrule Wells's sole point.

## V. CONCLUSION

Having overruled Wells's single point on appeal, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

MCCOY, J. filed a concurring opinion.

DELIVERED: July 2, 2009

10



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-08-380-CR

BRADLEY CHANCE WELLS                                              APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM COUNTY CRIMINAL COURT NO. 3 OF DENTON COUNTY

------------

## CONCURRING MEMORANDUM OPINION[1]

------------

I concur in the outcome reached by the majority and write only to point out that the strict application of the wording of this statute can lead to what I believe to be an unintended result. For example, if two streets are closer than 100 feet apart, the driver is required to begin signaling a turn before the first street, indicating to other drivers he is about to turn, but must proceed through

---

[1]*See* Tex. R. App. P. 47.4.

the intersection with the first street before turning on the second street. If a driver is searching for a street name and cannot, as in all likelihood, read the street name 100 feet away, then after he identifies the street on which he wishes to turn, he must drive through the intersection, turn around at some point in the distance, and return to the street to make his desired turn. The same scenario plays out in dense fog or a nighttime heavy rain. For these reasons, the statute should speak in terms of reasonableness, and not absolutes, and I believe it invokes the doctrine of unintended consequences.


BOB MCCOY
JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 2, 2009

2