NUMBER 13-11-00112-CR

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI
- EDINBURG

                                                                     


 

PRESTON MASCORRO,                                                     Appellant,

 

v.

 

THE STATE OF TEXAS,                                    Appellee.

                                                                     


 

On appeal from the 156th
District Court

of Bee County, Texas.

                                                                     


 

MEMORANDUM OPINION

 

                      Before
Justices Benavides, Vela and Perkes

                      Memorandum
Opinion by Justice Benavides

 

Appellant,
Preston Mascorro, was found guilty by jury of the offense of possession of a
prohibited substance in a correctional facility, a third-degree felony.  See
Tex. Penal Code Ann. § 38.11(d)(1)
(West Supp. 2010).  After Mascorro pleaded true to two punishment enhancements,
the trial court sentenced him to thirty years’ confinement in the Institutional
Division of the Texas Department of Criminal Justice.  The sentence was ordered
to run consecutively to his then-existing sentence for murder.  See id.
§19.02 (West 2003).  By one issue, Mascorro contends that the evidence
was insufficient to support his conviction.  We affirm.

I.  Background

            In
January of 2009, Mascorro occupied a single-occupancy cell in the McConnell
Unit correctional facility in Beeville.  After receiving information of
possible contraband, Officer Margarito Carreon and Sergeant Roger Rivas
initiated a search of Mascorro’s cell.  Each officer indicated that when they
ordered Mascorro to submit to hand restraint, he hesitated, looking at the desk
as if “[h]e wanted to go over there,” and only submitted upon threat of
administering pepper spray.  After Mascorro was removed from his cell, the
officers searched it and discovered a “folded-up paper” lying on top of the
cell’s desk.  On the outside of the paper, the number “44” was written, and
when the officers unfolded it, they discovered “a fingertip of a rubber glove
with a green leafy substance inside of it which did contain an odor.”  The
substance was determined at trial to be marihuana.  

Sergeant
Rivas testified that the folded-up paper was commonly known as a “kite” and was
used to exchange information or contraband between cells.  These “kites” were
drawn by a “line” from one inmate to another and their use was a daily
occurrence.

Sergeant
Rivas testified that, based on his experience, he believed that the number “44”
represented the destination of the package, and from Mascorro’s cell to cell
number forty-four was about thirty feet.  There was additional writing on the
inside of the paper that was sent to DPS for analysis.  Kenneth Crawford, a DPS
forensic document examiner, compared the writing on the note with a grievance
form that was allegedly filed by Mascorro at an earlier time and testified that
there was a “very strong probability” that the two documents were written by
the same person.  Crawford could not make a definitive determination, however,
because the offense report was a photocopy, and this prevented him from
analyzing the writing at magnification and from perceiving the speed and
pressure with which the pen was moved on the page.

Mascorro
and a fellow inmate, Johnny Rodgers, each testified that the folded paper was
being passed between two different cells by “lines” and Mascorro was merely
attempting to assist in passing the “kite” from one inmate to another without
having any knowledge of its contents.  Mascorro testified that he could not
pass the paper because some inmates would cut lines, and he received no
response from the person to whom he was supposed to pass the paper.  Mascorro
testified that he never opened the paper because “[s]omebody will hurt you for
getting in their business, you know what I mean?  I mean, that’s personal
stuff.  It’s like your mail at home, someone opens your mail you’re going to be
mad about it.”  After a “strip search” and a search of his cell, however, the
officers did not find any “line” in Mascorro’s possession.  

Mascorro
also testified that he did not write any message on the paper nor did he write
the grievance report used by the DPS examiner.  Though it was his grievance,
Mascorro testified that he had another inmate, who he referred to as a “jail
house lawyer,” write the grievance because “in order to write a grievance you
really have to know the codes to write [it] the correct way.  Everything gets
codes.  So everyone don’t know the code, you know.  Some people don’t even
study, that’s why you have writ writers, someone to help you do this.”  Mascorro
explicitly denied any knowledge of the paper’s contents.

Rodgers
testified that it was common knowledge that “kites” were used to move drugs,
along with other contraband, and that there was “[o]nly one way to get it
around.”

II.  Standard
of Review

Our
sufficiency review must be under “a rigorous and proper application” of the Jackson
standard of review.  See Brooks v. State, 323 S.W.3d 893, 906 (Tex.
Crim. App. 2010).  Under this standard, “the relevant question is whether,
after viewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.”  Jackson v. Virginia, 443 U.S. 307, 319
(1979); see Brooks, 323 S.W.3d at 902 n.19.  “[T]he fact-finder’s role
as weigher of the evidence is preserved through a legal conclusion that upon
judicial review all of the evidence is to be considered in the light
most favorable to the prosecution.”  Jackson, 443 U.S. at 319 (emphasis
in original); see also Tex. Code
Crim. Proc. Ann. art. 38.04 (West 1979) (“The jury, in all cases, is the
exclusive judge of facts proved, and the weight to be given to the
testimony . . . .”); Wesbrook v. State, 29 S.W.3d
103, 111 (Tex. Crim. App. 2000) (“The jury is the exclusive judge of the
credibility of witnesses and of the weight to be given testimony, and it is
also the exclusive province of the jury to reconcile conflicts in the
evidence.”).

            Sufficiency
of the evidence is measured by the elements of the offense as defined by a
hypothetically correct jury charge.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).  Under a hypothetically correct jury charge, the State
was required to prove beyond a reasonable doubt that Mascorro knowingly or
intentionally possessed a controlled substance, namely marihuana, in a
correctional facility. See Tex.
Penal Code Ann. § 38.11(d)(1).  To prove “possession,” the State was
required to show that Mascorro (1) exercised “actual care, custody, control, or
management” of the substance and (2) knew the matter possessed was contraband. 
Tex. Health & Safety Code Ann.
§ 481.002(38); Tex. Penal Code Ann.
§ 1.07(39) (West Supp. 2010); Poindexter v. State, 153 S.W.3d 402,
405–06 (Tex. Crim. App. 2005).  Knowledge that the matter possessed was
contraband may be inferred from the acts, words, or conduct of the accused.  Grant
v. State, 989 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no
pet.).  Additionally, evidence establishing care, custody, control or
management of the matter can likewise be used to establish knowledge of the
nature of the substance.  Id.; see also Ryals v. State,
No. 07-09-00057-CR, 2010 Tex. App. LEXIS 1174, at *4 (Tex. App.—Amarillo Feb.
18, 2010, pet. ref’d) (mem. op., not designated for publication).

III.  Analysis

            In
his sole issue, Mascorro concedes each element of the offense with the
exception of the element requiring the state to prove that Mascorro knew that
the paper contained marihuana.  Mascorro contends that the evidence was
insufficient to establish beyond a reasonable doubt that he knew the “kite”
contained marihuana.  We must view all of the evidence in the light most
favorable to the prosecution.  Jackson, 443 U.S. at 319.

            First,
the testimony indicated that, when asked to submit to hand restraint, Mascorro
hesitated while looking at the paper and had to be threatened with pepper spray
before complying.  The jury could have interpreted this as an indication that
Mascorro knew what was in the paper because this conduct tended to show
knowledge of guilt.  See Grant, 989 S.W.2d at 433 (noting that the
defendant’s conduct may be used to infer knowledge that the matter possessed
was contraband).

            Second,
although Mascorro and Rodgers gave an account of the events that would tend to
show that Mascorro did not have knowledge of the paper’s contents, because the
jury is the sole judge of the credibility of the witnesses and the weight to be
given to their testimony, the jury was free to disbelieve all such testimony.  See
Tex. Code Crim. Proc. Ann.
art. 38.04; Wesbrook, 29 S.W.3d at 111.  Moreover, the fact that the
officers did not find any “line” that Mascorro could have been using at the
time of the incident bolsters a possible interpretation by the jury that
Mascorro’s story was not credible.

            Third,
the testimony indicated that a grievance report signed “Preston Mascorro”
contained handwriting with a “very strong probability” of being the same
handwriting within the paper.  This tended to show that Mascorro had written
the note and was therefore aware of the paper’s content.  Citing Camacho v.
State, Mascorro contends that the evidence was insufficient to link
him to the authorship of the note because (1) he denied under oath the writing
of both the grievance form and the note, and (2) the State only used a
handwriting comparison and provided no additional evidence linking him to the
authorship of the note.  See Camacho v. State, 765 S.W.2d 431, 434 (Tex.
Crim. App. 1989) (citing Tex. Code Crim.
Proc. Ann. art. 38.27 (West 1979)) (“[I]f a defendant denies either his
signature or his handwriting under oath then the State must present other
evidence tending to connect the defendant to the authorship of the disputed
document.”).  In Camacho, the writing at issue was a note left on the
body of a murder victim, and there was no physical connection of the note to
the defendant.  Id. at 432.  In this case, however, the fact that
Mascorro had actual care, custody, control and management of the writing was at
least some additional evidence to connect him to its authorship, and therefore,
it was within the province of the jury to resolve any conflict between
Mascorro’s testimony and that of the DPS forensic document examiner regarding
the two writings.  See id. at 434; Wesbrook, 29 S.W.3d at 111. 
When viewed in the light most favorable to the prosecution, this evidence
tended to show that Mascorro did have actual knowledge of the paper’s contents.

            Fourth,
Rodgers testified that it was common for drugs to be passed in a “kite,”
indicating that, even if Mascorro was not the author of the note, he
nevertheless was likely to know that it contained marihuana.

            And
fifth, the fact that Mascorro had actual care, custody, control and management
of the “kite” constituted some evidence, in itself, from which the jury could
infer that Mascorro knew of the paper’s contents.  See Grant, 989 S.W.2d
at 433; see also Ryals, 2010 Tex. App. LEXIS 1174, at *4.

            Based
on this evidence, and when viewed in the light most favorable to the
prosecution, there was a rational basis on which the jury could have found that
Mascorro knew that the paper in his cell contained marihuana. See Jackson,
443 U.S. 307, 319 (1979); Brooks, 323 S.W.3d at 902 n.19.  Accordingly,
we overrule Mascorro’s sole issue.




IV. 
Conclusion

            Having
overruled Mascorro’s only issue, we affirm the trial court’s judgment.

 

 

________________________

GINA
M. BENAVIDES,

Justice

 

Do not publish.

Tex. R. App.
P. 47.2(b).

 

Delivered and filed the

29th day of August, 2011.