

NUMBER 13-11-00112-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**PRESTON MASCORRO,**                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                 **Appellee.**

### On appeal from the 156th District Court
### of Bee County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Vela and Perkes**
**Memorandum Opinion by Justice Benavides**

Appellant, Preston Mascorro, was found guilty by jury of the offense of possession of a prohibited substance in a correctional facility, a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.11(d)(1) (West Supp. 2010). After Mascorro pleaded true to two punishment enhancements, the trial court sentenced him to thirty years' confinement in

the Institutional Division of the Texas Department of Criminal Justice. The sentence was ordered to run consecutively to his then-existing sentence for murder. *See id.* §19.02 (West 2003). By one issue, Mascorro contends that the evidence was insufficient to support his conviction. We affirm.

## I. BACKGROUND

In January of 2009, Mascorro occupied a single-occupancy cell in the McConnell Unit correctional facility in Beeville. After receiving information of possible contraband, Officer Margarito Carreon and Sergeant Roger Rivas initiated a search of Mascorro's cell. Each officer indicated that when they ordered Mascorro to submit to hand restraint, he hesitated, looking at the desk as if "[h]e wanted to go over there," and only submitted upon threat of administering pepper spray. After Mascorro was removed from his cell, the officers searched it and discovered a "folded-up paper" lying on top of the cell's desk. On the outside of the paper, the number "44" was written, and when the officers unfolded it, they discovered "a fingertip of a rubber glove with a green leafy substance inside of it which did contain an odor." The substance was determined at trial to be marihuana.

Sergeant Rivas testified that the folded-up paper was commonly known as a "kite" and was used to exchange information or contraband between cells. These "kites" were drawn by a "line" from one inmate to another and their use was a daily occurrence.

Sergeant Rivas testified that, based on his experience, he believed that the number "44" represented the destination of the package, and from Mascorro's cell to cell number forty-four was about thirty feet. There was additional writing on the inside of the paper that was sent to DPS for analysis. Kenneth Crawford, a DPS forensic document

2

examiner, compared the writing on the note with a grievance form that was allegedly filed by Mascorro at an earlier time and testified that there was a "very strong probability" that the two documents were written by the same person. Crawford could not make a definitive determination, however, because the offense report was a photocopy, and this prevented him from analyzing the writing at magnification and from perceiving the speed and pressure with which the pen was moved on the page.

Mascorro and a fellow inmate, Johnny Rodgers, each testified that the folded paper was being passed between two different cells by "lines" and Mascorro was merely attempting to assist in passing the "kite" from one inmate to another without having any knowledge of its contents. Mascorro testified that he could not pass the paper because some inmates would cut lines, and he received no response from the person to whom he was supposed to pass the paper. Mascorro testified that he never opened the paper because "[s]omebody will hurt you for getting in their business, you know what I mean? I mean, that's personal stuff. It's like your mail at home, someone opens your mail you're going to be mad about it." After a "strip search" and a search of his cell, however, the officers did not find any "line" in Mascorro's possession.

Mascorro also testified that he did not write any message on the paper nor did he write the grievance report used by the DPS examiner. Though it was his grievance, Mascorro testified that he had another inmate, who he referred to as a "jail house lawyer," write the grievance because "in order to write a grievance you really have to know the codes to write [it] the correct way. Everything gets codes. So everyone don't know the code, you know. Some people don't even study, that's why you have writ writers, someone to help you do this." Mascorro explicitly denied any knowledge of the

3

paper's contents.

Rodgers testified that it was common knowledge that "kites" were used to move drugs, along with other contraband, and that there was "[o]nly one way to get it around."

## II. STANDARD OF REVIEW

Our sufficiency review must be under "a rigorous and proper application" of the *Jackson* standard of review. *See Brooks v. State*, 323 S.W.3d 893, 906 (Tex. Crim. App. 2010). Under this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323 S.W.3d at 902 n.19. "[T]he fact-finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319 (emphasis in original); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) ("The jury, in all cases, is the exclusive judge of facts proved, and the weight to be given to the testimony . . . ."); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.").

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Under a hypothetically correct jury charge, the State was required to prove beyond a reasonable doubt that Mascorro knowingly or intentionally possessed a controlled substance, namely marihuana, in a correctional facility. *See* TEX. PENAL CODE

4

ANN. § 38.11(d)(1). To prove "possession," the State was required to show that Mascorro (1) exercised "actual care, custody, control, or management" of the substance and (2) knew the matter possessed was contraband. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38); TEX. PENAL CODE ANN. § 1.07(39) (West Supp. 2010); *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005). Knowledge that the matter possessed was contraband may be inferred from the acts, words, or conduct of the accused. *Grant v. State*, 989 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Additionally, evidence establishing care, custody, control or management of the matter can likewise be used to establish knowledge of the nature of the substance. *Id.*; *see also Ryals v. State*, No. 07-09-00057-CR, 2010 Tex. App. LEXIS 1174, at *4 (Tex. App.—Amarillo Feb. 18, 2010, pet. ref'd) (mem. op., not designated for publication).

### III. ANALYSIS

In his sole issue, Mascorro concedes each element of the offense with the exception of the element requiring the state to prove that Mascorro knew that the paper contained marihuana. Mascorro contends that the evidence was insufficient to establish beyond a reasonable doubt that he knew the "kite" contained marihuana. We must view all of the evidence in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319.

First, the testimony indicated that, when asked to submit to hand restraint, Mascorro hesitated while looking at the paper and had to be threatened with pepper spray before complying. The jury could have interpreted this as an indication that Mascorro knew what was in the paper because this conduct tended to show knowledge

5

of guilt. *See Grant*, 989 S.W.2d at 433 (noting that the defendant's conduct may be used to infer knowledge that the matter possessed was contraband).

Second, although Mascorro and Rodgers gave an account of the events that would tend to show that Mascorro did not have knowledge of the paper's contents, because the jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the jury was free to disbelieve all such testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Wesbrook*, 29 S.W.3d at 111. Moreover, the fact that the officers did not find any "line" that Mascorro could have been using at the time of the incident bolsters a possible interpretation by the jury that Mascorro's story was not credible.

Third, the testimony indicated that a grievance report signed "Preston Mascorro" contained handwriting with a "very strong probability" of being the same handwriting within the paper. This tended to show that Mascorro had written the note and was therefore aware of the paper's content. Citing *Camacho v. State*, Mascorro contends that the evidence was insufficient to link him to the authorship of the note because (1) he denied under oath the writing of both the grievance form and the note, and (2) the State only used a handwriting comparison and provided no additional evidence linking him to the authorship of the note. *See Camacho v. State*, 765 S.W.2d 431, 434 (Tex. Crim. App. 1989) (citing TEX. CODE CRIM. PROC. ANN. art. 38.27 (West 1979)) ("[I]f a defendant denies either his signature or his handwriting under oath then the State must present other evidence tending to connect the defendant to the authorship of the disputed document."). In *Camacho*, the writing at issue was a note left on the body of a murder victim, and there was no physical connection of the note to the defendant. *Id.* at 432.

6

In this case, however, the fact that Mascorro had actual care, custody, control and management of the writing was at least some additional evidence to connect him to its authorship, and therefore, it was within the province of the jury to resolve any conflict between Mascorro's testimony and that of the DPS forensic document examiner regarding the two writings. *See id.* at 434; *Wesbrook*, 29 S.W.3d at 111. When viewed in the light most favorable to the prosecution, this evidence tended to show that Mascorro did have actual knowledge of the paper's contents.

Fourth, Rodgers testified that it was common for drugs to be passed in a "kite," indicating that, even if Mascorro was not the author of the note, he nevertheless was likely to know that it contained marihuana.

And fifth, the fact that Mascorro had actual care, custody, control and management of the "kite" constituted some evidence, in itself, from which the jury could infer that Mascorro knew of the paper's contents. *See Grant*, 989 S.W.2d at 433; *see also Ryals*, 2010 Tex. App. LEXIS 1174, at *4.

Based on this evidence, and when viewed in the light most favorable to the prosecution, there was a rational basis on which the jury could have found that Mascorro knew that the paper in his cell contained marihuana. *See Jackson*, 443 U.S. 307, 319 (1979); *Brooks*, 323 S.W.3d at 902 n.19. Accordingly, we overrule Mascorro's sole issue.

7

## IV. CONCLUSION

Having overruled Mascorro's only issue, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of August, 2011.